# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN

---

SALLY KIRKWOOD, Personal Representative
of the ESTATE OF DONALD JOHN ANDERSON, Deceased

     PLAINTIFF

    -vs-                                       Case No.

                                                 HON.

COUNTY OF KENT, a municipal corporation, and
SHERIFF MICHELLE LAJOYE-YOUNG;
UNDERSHERIFF CHARLES DEWITT;
DEPUTY MICHAEL STACK;
THE FAMILY OUTREACH CENTER;
CHAYENNE SMITH;
and other UNKNOWN DEPUTIES;
JANE DOE; and JOHN DOE;
Individually, and in their official / supervisory capacities,
Jointly and Severally,

     DEFENDANTS.                        JURY TRIAL DEMANDED
_____/

**MARCEL S. BENAVIDES (P69562)**
THE MARCEL S. BENAVIDES LAW OFFICE PLLC
Attorney for PLAINTIFF
801 West Eleven Mile Rd. Ste. 130
Royal Oak, MI 48067
(248) 549-8555
benavideslaw@att.net

**MATTHEW S. KOLODZIEJSKI (P71068)**
LAW OFFICE OF MATTHEW S. KOLODZIEJSKI PLLC
Attorney for PLAINTIFF
200 E. Big Beaver Road
Troy, MI 48083
(313) 736-5060
mattkolo@comcast.net
_____/

### COMPLAINT AND JURY DEMAND

There is no other civil action between these parties arising out of the same transaction or occurrence as alleged in this complaint pending in this court, nor has any such action been previously filed and dismissed or transferred after having been assigned to a judge.

**NOW COMES** the PLAINTIFF, Sally Kirkwood, as Personal Representative for the Estate of Donald John Anderson, deceased ("Donald Anderson"), and through her attorneys, **MARCEL S. BENAVIDES** and **MATTHEW S. KOLODZIEJSKI**, and for her complaint against Defendant County of Kent ("Defendant Kent County"), Kent County Sheriff Michelle LaJoye-Young ("Defendant Sheriff LaJoye-Young"), Kent County Undersheriff Charles Dewitt ("Defendant Undersheriff Dewitt"), Deputy Micael Stack ("Defendant Deputy Stack"), Unknown Kent County Deputies ("Unknown Defendant Deputies"), Defendant The Family Outreach Center ("Defendant Family Outreach Center") Defendant Chayenne Smith ("Defendant Smith"), Jane Doe and John Doe, and collectively all of the above referred to as "Defendants" states as follows:

### INTRODUCTION

1.      This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Decedent, Donald Anderson's, and PLAINTIFF's rights as secured by the United States Constitution due to the shocking deliberate indifference of all of the Defendants.

2.      The events that gave rise to this complaint began during the in-custody booking of Donald Anderson on February 22, 2021, at the Kent County Jail and culminated with his death by suicide in his jail cell on March 2, 2021, whereupon he was pronounced dead the next day.

3.      As described below, Donald Anderson was 53 years old and had a  history of serious psychiatric treatment needs including suicidal ideation. That history was known to Defendants as he was housed in the Kent County Jail twenty-nine other times in his prior bookings with prior suicide alerts in his permanent jail record that followed him with each booking. It was known that

Donald Anderson suffered from anxiety, depression, alcoholism and that he had made suicide attempts during his direct contacts with the Kent County Sheriff's Department, including one very serious suicide attempt where the Kent County Sheriff's Department deputies arrested and hospitalized him all occurring within a matter of months prior to the instant tragedy.

4.      As explained below, Donald Anderson showed a strong likelihood that he would attempt to take his own life in such a manner that failure to take adequate precautions amounted to deliberate indifference to his serious medical needs.

5.      The Kent County Jail has had an extraordinary number of suicides by inmates due to its continued deliberate indifference to those that suffer from mental illness and / or suicidal ideation.

6.      Following yet another senseless tragedy, Defendants embarked on an effort to cover up the circumstances surrounding the death of Donald Anderson. Through its agents and officials, Defendant Kent County conducted a biased death investigation to conceal the unconstitutional conduct alleged herein. As part of Defendant Sheriff LaJoye-Young's sham tactics, she commandeered her department to go on a mission in an attempt to find no blame with any of her subordinates or with Defendant Family Outreach. No independent police agency was brought in to investigate the death of Donald Anderson. Rather, Defendant Sheriff LaJoye-Young simply utilized her own biased officers to conduct an investigation that covered up the Defendants' deliberate indifference to a serious medical need. Her subordinates framed the investigation to solely put blame on Donald Anderson as they purposefully chose to coverup the evidence that they had actual knowledge that Donald Anderson was experiencing suicidal ideation from not only himself, but also knowledge in his prior Kent County Sheriff police contacts and Kent County jail permanent booking records. They also had actual knowledge directly from inmate, Ryan Galloway, who issued multiple kites in the jail requesting mental health treatment for Donald

Anderson due to his suicidal ideation that went unanswered.[1] Even more damning was that Ryan Galloway had specifically told Defendant Deputy Stack of Donald Anderson's immediate need for help for his suicidal ideation. To date, the kites have magically not been found and Ryan Galloway's statements made during the internal Kent County Jail investigation have been falsified in a conspiratorial effort to coverup the knowledge of the imminent suicidal ideation of Donald Anderson.

7.      The biased internal investigation found no criminal liability or conduct inconsistent with policies with any of the Defendant County agents / employees or of Defendant Family Outreach Center agents / employees to insulate them from civil liability. Donald Anderson showed a strong likelihood that he would attempt to take his own life in such a manner that failure to take adequate precautions amounted to deliberate indifference to his serious medical needs by all Defendants.

## JURISDICTION & VENUE

8.      This Court has jurisdiction of this action under the provisions of Title 28 of the United States Code, Sections 1331, 1367, 1343, and 42 USC §1983 and also has pendent jurisdiction over all state claims that arise out of the nucleus of operative facts common to Plaintiff's federal claims.

9.      Venue is proper under 28 U.S.C. § 1391 (b) as the events giving rise to the claims asserted in this complaint occurred within this District.

10.     This is a civil action brought pursuant to the Civil Rights Act, 42 U.S.C. §1981, *et seq.*, seeking monetary and punitive damages against Defendants under 42 U.S.C. §1983, and costs

---

[1] A "kite" is a form that allows inmates to communicate and get information about "just about anything," including court dates, visitors, lawyers' information, requests, complaints, or medical assistance. *See, e.g.*, *Meirs v. Ottawa Cnty.*, 821 Fed.Appx. 445, 448 (6th Cir. 2020).

and attorney fees under 42 U.S.C. §1988, for violations of Plaintiff's rights under the 4th, 8th, and/or 14th Amendments of the United States Constitution.

11. Plaintiff brings this suit against each and every Defendant in both their individual and official capacities. Upon information and belief all named individual Defendants are residents of the State of Michigan.

12. Each and every act of all Defendants, as set forth herein, were done by those Defendants under the color and pretense of the statutes, ordinances, regulations, laws, and customs, and by virtue of, and under the authority of the color of law and such actions were performed in the course and scope of employment of each individual Defendant.

13. The amount in controversy exceeds Seventy-Five Thousand ($75,000.00) Dollars, exclusive of costs, interest, and attorney fees.

## PARTIES

A. <u>Plaintiff</u>

14. PLAINTIFF, Sally Kirkwood, as Personal Representative for the Estate of Donald John Anderson, the mother of Decedent Donald Anderson, is a resident of the County of Kent, State of Michigan. Plaintiff is the duly appointed Personal Representative for the Estate of Donald John Anderson and files this lawsuit in both her individual and her representative capacity.

15. Decedent, Donald Anderson, was a man that was incarcerated at the Kent County Jail at the times of the events at issue in this case as a pretrial detainee awaiting resolution of a pending criminal matter as he was unable to post his bond.

B. <u>Kent County Defendants:</u>

16. Defendant Kent County, at the times of the events at issue in this case is a municipal corporation located in the County of Kent, State of Michigan, who is responsible for providing professional and responsive health care and mental health care for the inmates, who are pretrial

detainees and / or convicted inmates, at the Kent County Jail. All pretrial detainees and/or inmates are entitled to protection under the 14th Amendment to the United States Constitution.

17. Defendant Kent County is liable under state and/or federal law for all injuries proximately caused by: intentional, willful and wanton, reckless, deliberately indifferent, grossly negligent and/or negligent acts and/or omissions committed pursuant to customs, policies, usage and/or practices which deprive citizens of their rights, privileges and/or immunities secured by the Constitutions and laws of the United States and/or of the State of Michigan.

18. Defendant Kent County contracted with one or more private individuals and corporate entities, such as Defendant Family Outreach Center, to provide medical care, mental health care and other services to its population of pretrial detainees and convicted inmates.

19. Defendant Sheriff LaJoye-Young , in her official capacity, at the times of the events at issue in this case is the Sheriff of Kent County, was at all relevant times a Kent County agent and /or employed by Defendant Kent County acting under color of law and within the scope of her employment. Defendant Sheriff LaJoye-Young is a final policymaker for Kent County with respect to all matters concerning the Kent County Sheriff's Office and all of its divisions, including the Kent County Jail, and is being named for the causes of actions in this complaint in both her official and individual capacities. As all times relevant to the events at issue in this case, Defendant Sheriff LaJoye-Young promulgated rules, regulations, policies, and procedures as the Kent County Sheriff for the provision of certain medical care to the pretrial detainees and inmates at the Kent County Jail. She is a resident of the State of Michigan.

20. Defendant Undersheriff Dewitt, at the times of the events at issue in this case, was a supervising deputy, an agent and /or employed by Defendant Kent County and acting under color of law and within the scope of his employment. Defendant Undersheriff Dewitt was the Undersheriff of the Kent County Sheriff's Department at the times of the events at issue in this

case. Defendant Undersheriff Dewitt promulgated rules, regulations, policies, and procedures as an agent of the Sheriff of Kent County for the provision of certain medical care to the pretrial detainees and inmates at the Kent County Jail and is being named for the causes of actions in this complaint in both his official and individual capacities. He is a resident of the State of Michigan.

21.     Defendant Deputy Stack at the times of the events at issue in this case was a deputy, agent and /or employed by Defendant Kent County, and acting under color of law and within the scope of his employment. He is a resident of the State of Michigan.

C.  Mental Health Services Defendants:

22.     Defendant Family Outreach Center was a domestic nonprofit corporation, registered and licensed to conduct business in Michigan, and at all relevant times obligated under contract by Defendant Kent County to provide mental health care to the Kent County Jail inmates, including but not limited to formation and implementation of mental health care protocols, policies and/or customs and/or practices for the provision of mental health services at the Kent County Jail, and as such was acting at all times herein under color of law and pursuant to certain customs, policies, and/or practices, which were the moving force behind the constitutional violations asserted herein. Defendant Family Outreach's registered agent is Veneese V. Chandler, located at 1456 S. Saxony Dr. SE Grand Rapids, MI 49508.

23.     Defendant Smith at the times of the events at issue in this case was a jail inmate mental health counselor, agent, and / or employed by Defendant Family Outreach Center and / or Defendant Kent County, and acting under color of law and within the scope of her employment as a mental health service provider who was responsible for providing mental health care, screening, assessments, and crisis intervention to pretrial detainees and inmates, including Donald Anderson, while detained at the Kent County Jail. She is a resident of the State of Michigan.

D. Unknown Defendants:

24.     Following the death of Donald Anderson, multiple lawful requests for information were issued to Defendant Kent County and Defendant Family Outreach Center. It is uncertain if all records have been tendered and as such, it is anticipated that Plaintiff will amend this complaint by naming those parties identified in discovery that are presently not known.

## FACTS

25.     This claim involves yet another suicide death in the Kent County Jail within a short period of time. It is the tragic death of Donald Anderson, whereupon he hung himself in his cell and was later pronounced dead on March 3, 2021. His death was the result of the Defendants' deliberate indifference to his serious medical needs while he was incarcerated as a pretrial detainee in the Kent County Jail. It is once again another example of the deliberate indifference acts of the Defendants to a serious medical need of an in-custody individual that has occurred in this jail with an extraordinarily high number of suicides in the past years.

26.     Donald Anderson entered the Kent County Jail on February 22, 2021, at approximately 10:42 a.m. for the final time of his life, as it resulted in his in custody death.

27.     The booking intake consisted of separate mental and medical health screenings to assist in the classification for placement and for the medical and  mental health needs for inmates. The first is the Prescreen / Triage Screening that is completed by a deputy assigned to the intake. The second and third screenings are the Medical Screening Survey and the Mental Health Screening Survey which is completed by a medical professional. On February 22, 2021, at approximately 11:58:49 a.m., Heather Tunell MSN, RN, completed the second and third surveys and specifically noted on her medical screening form that Donald Anderson had: ETOH (alcohol) withdrawals, that he drank 30 beers a day, that he has had alcohol withdrawal symptoms in the

past, that he was currently under a physician's care, that he has alcohol abuse, anxiety, depression and that he had knee surgery 4.5 months prior to his booking. She also indicated "YES" on the medical screening form for the category of Mental Health and noted "aot notified of conditions" which memorialized that she notified the mental health professionals of Donald Anderson's mental health issues. She also made a referral to the jail doctor for Donald Anderson to be treated for alcohol withdrawals. Donald Anderson's withdrawals were significant, and he was issued a tapered course of the medication Librium and to be monitored/treated per the guidelines of Clinical Institute Withdrawal Assessment Alcohol Scale (CIWA). Heather Tunell, MSN, RN, also completed the mental health screening for her evaluation on February 22, 2021, at approximately 11:54 a.m. She included the following: that he drinks thirty beers a day, that he has alcohol withdrawal concerns, that he has had alcohol or drug withdrawals including "shakes, nausea," and that he answered "Yes" to the question "Are you taking medication for mental health issues? (If yes, list what, when and by whom or what organization" with her comments added "Anxiety and depression – no meds." She further wrote on the bottom of the mental health screening evaluation form as additional "comments: Ibir: 8/3/20 prior s alerts, aot notified. chart made. ok for gen population." Of significance is her notation that she had knowledge of Donald Anderson having prior a prior suicide alert from his August 3, 2020, booking, and that she notified the deputies and the mental health professional (aot). The mental alert she issued in the booking system to the deputies and mental health professionals was completed on February 22, 2021, at approximately 12:03 p.m. The records indicate that the medical professional identified as AOT066 acknowledged receipt of the alert on February 22, 2021, at approximately 3:17 p.m.

28.     During the booking process on February 22, 2021, at approximately 12:59 p.m., Deputy Kevin Cowdin specifically noted an "alert" in Donald Anderson's electronic booking file classifying it as "S1" under the alert category, and specially stated the alert type was

"MENTAL" with a reason listed as:  INM HIST (inmate history.) The charting also had the

"Critical" box checked. The jail records indicate that the alert codes become a historical permanent

record and are for the deputies, medical health, and mental health professionals to view and act

upon. An alert of "S1" in the Kent Count Jail booking system specifically identifies the following:

> "Inmates that may be depressed or have a history of suicidal thoughts or attempts that warrant tracking. The inmates are stable regarding suicidal ideation. These inmates can be placed in general population and in a single person cell. Mental health staff will see these inmates one time per week. The deputies in the inmate housing units should be alert to any drastic mood or personality changes. Mental health staff and/or classification are to be notified of any changes."

The medical professional identified as "AOT066" acknowledged receipt of the alert

on February 22, 2021, at approximately 3:17 p.m.

29.     On February 23, 2021, at approximately 9:55 p.m., in response to the mental health

notifications and alerts, Defendant Smith, who is a mental health counselor, met with Donald

Anderson. Despite his past documented status as highly classified "S1" inmate whom has had

significant suicidal issues in the Kent County Jail, despite her very own jail documented notes of

him having a history of mental health issues, her review of the Kent County Jail notifications and

alerts documented by the medical staff and jail staff during the intake of Donald Anderson's

suicide history, despite his documented untreated mental health, his current anxiety mental state,

his current depression mental state, his drinking habits of thirty beers a day, and his current

documented medical notification of him being on an alcohol withdrawal watch with prescribed

medication, she specifically <u>reduced</u> his inmate alert status to "S0" in the jail computer booking

case notes. An alert of "S0" in the Kent Count Jail booking system means specifically identifies

the following:

> History: Inmates that have a history of suicide threats or attempts but are currently emotionally stable. These inmates can be placed in

general population. Mental health staff will not need to see these inmates. Inmates that may be depressed or have a history of suicidal thoughts or attempts that warrant tracking. The inmates are stable regarding suicidal ideation. These inmates can be placed in general population and in a single person cell. Mental health staff will see these inmates one time per week. The deputies in the inmate housing units should be alert to any drastic mood or personality changes. Mental health staff and/or classification are to be notified of any changes.

Defendant Smith's reduction of the suicide alert, in light of the many factors stated above, was an act of deliberate indifference to Donald Anderson's serious medical needs.

30. On February 24, 2021, at 2:29 p.m., Deputy Carrie Hollinrake completed Donald Anderson's primary jail classification. Deputy Holinrake completed a Needs Screening Survey, which included mental health concerns. The survey also provides her with the results from the three intake screenings. Her notes indicate that Donald Anderson is experiencing alcohol withdrawals and that he has a current S0 alert for suicide (previously reduced by Defendant Smith), and she placed him in general population.

31. Donald Anderson was moved to various general population cells. On March 2, 2021, at approximately 1:27 a.m. Deputy Cody Lane was conducting a block check and observed Donald Anderson hanging from a bedsheet that was tied to the ladder in his cell. Donald Anderson was found to be unresponsive and was transported to Spectrum Health Butterworth Hospital via ambulance. Donald Anderson was pronounced dead on March 3, 2021, at 2:20 p.m. The autopsy findings were that the cause of death was asphyxia by hanging and the manner of death was suicide.

32. Instead of using an outside agency, Defendant Sheriff LaJoye-Young and Defendant Undersheriff Dewitt authorized Kent County Sheriff's Department Det. Tuinhoff as the assigned detective to conduct a criminal investigation into the death of Donald Anderson. As a means to insulate all Defendants from civil liability, the investigation was used as a rouse to cover up the deliberate indifference to Donald Anderson's serious medical needs. Det. Tuinhoff, in an

effort to cover up the acts of deliberate indifference falsified his police report. He indicated that on March 2, 2021, he interviewed inmate, Ryan Galloway. Det. Tuinhoff stated in his report that Ryan Galloway believed that Donald Anderson was suicidal He further wrote in his report falsifying that Ryan Galloway stated: that he "wrote a 'kite' that indicated Mental Health was needed and that put down his own cell room. He stated that this had occurred two days ago, and no one has reached out to him." This <u>lie</u> is in direct contrast to Ryan Galloway specifically telling Defendant Det. Tuinhoff that he submitted <u>over ten kites for many days prior to the hanging</u> describing Donald Anderson's suicidal ideation and his need for mental health.

33.    Ryan Galloway was an inmate that was housed with Donald Anderson at the Kent County Jail until his suicide. Ryan Galloway met Donald Anderson while they were both housed on L Floor in February 2021. While on L Floor, Ryan Galloway observed Donald Anderson tie a noose with a sheet, but it fell apart. Donald Anderson was then moved to D Floor.

34.    Ryan Galloway was subsequently moved to D Floor where he was in the cell right next door to Donald Anderson. For many days Ryan Galloway and Donald Anderson would talk whereupon Donald Anderson indicated to him that he was suicidal. Fearing for Donald Anderson taking his own life, Ryan Galloway <u>sent at least ten kites explaining that Donald Anderson was going to kill himself and that he needed help</u>.

35.    For many days immediately prior to Donald Anderson hanging himself, Ryan Galloway would deliver the kites to the deputies by putting the kites in the door jamb, and also place them in the additional kite box hanging on the wall by the telephones, as directed.

36.    Moreover, while on D floor, Ryan Galloway could hear Donald Anderson's voice telling deputies that if he did not receive mental help that "bad things were going to happen to him."

37.     Ryan Galloway told Defendant Deputy Stack prior to Donald Anderson hanging himself that Donald Anderson was going to hurt himself and to get him mental help. Defendant Deputy Stack told Ryan Galloway that the kites he sent were received and that Donald Anderson would receive help.

38.     While on L Floor and D Floor, Ryan Galloway also heard Donald Anderson tell two medical personnel that he was suicidal and was having alcohol withdrawal.

39.     In an effort to conspire to coverup the liability of Defendants, on March 2, 2021, AOT Bridget Dochod documented and lied in Ryan Galloway's jail case file notes that he stated to her that "he feels he could have changed the situation had he alerted the Deputy of statements made prior to the incident." This is a direct lie as Ryan Galloway did the complete opposite and sent many kites and told Defendant Deputy Stack of his concerns.

40.     In another effort to conspire to coverup the liability of Defendants, on March 2, 2021, Defendant Smith documented and lied in Ryan Galloway's jail case file notes that he stated that "he (Galloway) feels that he could have done more." This is a direct lie as Ryan Galloway did the complete opposite and sent many kites and told Defendant Deputy Stack of his concerns.

41.     Once again, in an effort to deflect civil liability, Defendant Sheriff LaJoye-Young and Defendant Undersheriff Dewitt authorized an internal affairs investigation to be conducted by Lt. Lyons. On March 11, 2021, Lt. Lyons, in yet another coconspirator act, completed an internal affairs report that contained false and/or omitted information to ensure that no civil liability could be assessed to Defendant Kent County or its agents/employees. Lt. Lyons purposefully did not include in his report the extensive suicidal history of Donald Anderson as an inmate in the Kent County Jail (including the S2 classification inmate status as discussed below by Dr. Flentje), the prior Kent County Sheriff runs / events / arrests with Donald Anderson that dealt with his suicide attempts in the jail and outside of the jail, and the actual knowledge of Defendant Deputy Stack

gained by Ryan Galloway of Donald Anderson's suicidal ideations. Nor did he "find" or include the many "missing" kites issued by Ryan Galloway asking for mental help for Donald Anderson.

42.     In yet in another effort to relieve themselves of liability for Donald Anderson's in custody death, various brass members of the Kent County Sheriff's Department, the mental health professionals, and the medical staff conducted a "Mortality Review" meeting on May 24, 2021. The meeting minutes document completely contradictory information to the jail information as the members claimed in the open discussion, "Patient had been in and out of custody since the 90s with no previous concerns of the patient being suicidal." This lie of Donald Anderson's lack of past suicidal history, which is completely contrary to the jail's very own records and classification of S1 status, was an effort to shed civil liability as the Mortality Review is subject to outside government agency scrutiny. As described below, the agenda minutes also stated that the cellmate next door (Ryan Galloway) only stated that Donald Anderson did not want to go back to prison. This is yet another lie as described herein since Ryan Galloway expressed to the individuals that interviewed him that he sent multiple kites indicating that Donald Anderson was going to hurt himself and asked for Donald Anderson to receive mental health. Ryan Galloway also indicated to the individuals that he told Defendant Deputy Stack prior to the suicide that Donald Anderson needed mental health help as he was going to hurt himself and that fact was not included in the minutes.

43.     Due to the Mortality Review meeting, Dr. Flentje, presented his Psychological Autopsy of Donald Anderson.[2] His memorialized findings were that Donald Anderson was being treated at the jail for alcoholic withdrawals and that such abuse of substances "is a dynamic risk factor for suicide." He further memorialized that Donald Anderson gave a history of generic

---

[2] The typical psychological autopsy is based on a detailed review of all file information on the inmate, a careful examination of the suicide site, and interviews with staff, inmates, and family members familiar with the deceased.

anxiety and depression "for which he was not being treated." Based on his review of the jail system information, Dr. Flentje documented, <u>"He was noted to have been previously on suicide precautions, as high as S2 at some point in the past."</u> Upon information and belief S2 classification indicates that the inmate has at least attempted suicide and that the attempt failed beyond the control of the inmate. Dr. Flentje's very own findings indicate that the coverup of Donald Anderson's prior jail incarceration where he was a significant mental health suicidal inmate illustrates that Defendants' Mortality Review meeting was simply a hoax to coverup that Defendants were deliberately indifferent to Donald Anderson's serious medical needs.

44.     To further the insulation of liability for Defendants, the members of the Mortality Review team memorialized in its findings stating that there are "no concerns" as it relates to the facility operations and "no concerns" as it relates to the policies and procedures that may need improvement as related to Donald Anderson's death.

45.     Defendant Kent County has a policy and practice to not respond to kites in a timely manner creating a culture of being deliberately indifferent to inmates' serious medical needs. For example, inmate Kevin Bonham, sent many kites for over four months stating that he was repeatedly being sexually assaulted by Theresa Simmons, who was an AOT medical professional employed by Defendant Family Outreach Center. He received no help as a result of his many submitted kites. Mr. Bonham eventually filed a pro se civil rights case in the Western District of Michigan, Case No. 22cv00248, where his matter was finally heard and eventually investigated by the Kent County Sheriff's Department. As a result of Mr. Bonham's federal filing, Defendant LaJoye-Young finally acted upon the complaint and authorized an investigation of the sexual assaults despite the many months of ignoring the many kites he sent in the Kent County Jail. Ms. Simmons eventually pled guilty to criminal charges as a result of her assault on Mr. Bonham. The culture of ignoring kites is prevalent and directly contributes to the deliberate indifference of

inmates' serious medical needs when the needs continue to be unmet. One may conclude that perhaps Ryan Galloway's kites were  lost in the same manner as Mr. Bonham's.

46.     The jail records in the Kenty County Jail database documented Donald Anderson's serious psychiatric needs and his prior suicide attempts and/or ideation over the course of decades. Those records provided Defendants actual knowledge of his suicide risk in the jail setting and documented his need for specialized mental health housing especially considering his recent bookings prior to his death. This deliberate indifference to Donald Anderson's serious medical needs created a substantial risk for him to kill himself.

47.     Despite Donald Anderson's past documented status as an S1 inmate (and also as an S2 inmate per Dr. Fletje), Defendant Smith's very own jail documented notes of him having a history of mental health issues, her review of the Kent County Jail notifications and alerts documented by the medical staff and jail staff during the intake of Donald Anderson's suicide history, despite his documented untreated mental health, his current anxiety mental state, his current depression mental state, his drinking habits of thirty beers a day, and his current documented medical notification of him being on an alcohol withdrawal watch with prescribed medication, she specifically reduced his inmate alert status to "S0" in the jail computer booking case notes. Defendant Smith was deliberately indifferent to Donald Anderson's serious medical needs when she lowered his suicide risk and allowed him to be placed in a general population cell rather than an area with necessary mental health treatment, observation, and housing by not placing him in the appropriate level of suicide care that mandated preventative measures from self harm.

48.     Defendant Deputy Stack was deliberately indifferent to Donald Anderson's serious medical needs when he did nothing to assist him with his imminent serious medical needs after he received direct verbal confirmation from Ryan Galloway (prior to Donald Anderson hanging himself) that he was going to hurt himself and that he needed immediate mental help. Further,

Defendant Deputy Stack was deliberately indifferent to Donald Anderson's serious medical needs when he did nothing for Donald Anderson's suicidal ideation after he acknowledged to Ryan Galloway that the kites that he sent stating that Donald Anderson was going to hurt himself were all received. Defendant Deput Stack was deliberately indifferent to Donald Anderson's serious suicidal ideation / self harm medical needs when he lied to Ryan Galloway stating to him that Donald Anderson would receive help for his mental health needs as he did nothing to help him.

49.     Defendants are and have been aware that the period immediately following arrest and incarceration is often a period of greater suicide risk, especially for people entering jails with serious psychiatric treatment needs and/or histories of suicidality. Thus, individuals such as Donald Anderson, who was experiencing the mental and health conditions stated herein and who was taken into custody a few months prior by Defendant Kent County deputies for a suicide attempt then hospitalized, must be placed in mental observation housing with a high level of constant supervision, and must receive a prompt psychiatric assessment and treatment by a qualified mental health professional. Such a practice  would certainly apply to an inmate who had achieved the nearly highest level of suicide risk in Kent County Jail, the "S2" classification that Dr. Fletje documented as Donald Anderson's past suicide risk at the jail. Despite ignoring their own policies and / or standard customs, Defendants chose to be deliberately indifferent to Donald Anderson's serious medical needs by increasing his suicide risk by not providing him mental health treatment and placing him in general population where he was not monitored ultimately causing him to be able to hang himself.

50.     Based on the aforementioned facts, Defendants were on actual notice that Donald Anderson manifested a serious medical condition the required immediate attention, care, and treatment. Nevertheless, Defendants, acting pursuant to Defendant Kent County and / or Defendant Family Outreach Center's customs, policies and / or practices, and without necessary training,

deliberately disregarded Donald Anderson's serious medical needs. By way of example, Defendant Deputy Stack, with actual knowledge of Donald Anderson having suicidal ideation, failed to inquire of him regarding his emotional / psychological / mental state or to ask him about his suicidal ideations, failed to seek medical or psychological attention for him nor requested an increase of surveillance / monitoring of him.

51.    Despite actual knowledge of Donald Anderson previous suicide alerts and attempts, his current mental health state, and suicidal ideations, and more importantly, armed with actual knowledge confirmed by Ryan Galloway's outcry to Defendant Deputy Stack along with his many kites to jail personnel, Donald Anderson was left alone in his cell for hours unmonitored. Defendants failed to promptly undertake the following reasonable and well accepted precautionary measures, among others, in order to reduce the risk of and prevent him from committing suicide:

      a.  To conduct an interview of Donald Anderson so as to assess the validity of the concerns explicitly expressed by his fellow inmate, Ryan Galloway, via his communication to Defendant Deputy Stack and his kites;

      b.  To seek the needed professional mental health care assessment of and attention for Donald Anderson;

      c.  To relocate Donald Anderson to a suicide prevention location / housing so as to be under more frequent or continuous surveillance;

      d.  To remove any items, such as sheets, which could be used by a suicidal inmate, Donald Anderson, to cause serious injury or death by hanging;

      e.  To take any other reasonable precautionary measures to adequately protect Donald Anderson from the dire psychiatric emergency in which he found himself.

52.    At times leading up and including March 2, 2021, Defendant Deputy Stack was on actual notice of Donald Anderson's strong likelihood of suicide based upon actual knowledge received directly from Ryan Galloway's conversation with him and the kites for mental help that

he admitted were received and based on Donald Anderson's jail file which indicated prior suicide alerts along with his alcohol withdrawal, depression and anxiety status.

53.     Defendant Deputy Stack unreasonably, deliberately and / or recklessly disregarded Donald Anderson's serious mental health needs by failing to notify any person of his suicidal ideations and / or his declining mental health indicative of self harm, by failing to request mental health help from a qualified person, by not requesting that Donald Anderson be relocated to a preventative suicide cell or a cell with constant monitoring, and by not removing tools, i.e.. a sheet, to use to hang oneself in his cell. He simply did nothing and allowed Donald Anderson to finalize his ultimate act of self harm.

54.     Defendant Smith unreasonably, deliberately and / or recklessly disregarded Donald Anderson's serious mental health needs by failing to properly evaluate him for his serious mental health needs, by actually reducing the suicide alert despite the documented jail suicidal history, by failing to increase the suicide alert due to the documented suicide history, the documented untreated mental illness of depression and anxiety along with his alcohol withdrawal, by not seeking or referring him to a psychologist, psychiatrist or other qualified health provider in a timely manner, and by allowing him to be cleared for general population where he would not be closely monitored for self harm.

55.     Defendant Smith and Defendant Deputy Stack did not provide Donald Anderson mental health treatment or seek a qualified mental health evaluation despite the need for treatment so obvious that even a lay person would have recognized the need for psychological / psychiatric evaluation.

56.     Despite the aforementioned actual knowledge of the risk of the suicide of Donald Anderson within the Kent County Jail, Defendants failed to take adequate steps to address and reduce that risk.

57.     This systemic lack of an adequate response and / or procedure constituted a custom, practice and / or policy that affirmatively failed to address the serous medical needs of suicidal inmates such as Donald Anderson.

58.     As a result of the customs, policies, and practices of Defendant Kent County, all of the clearly necessary precautions, as set forth above, were deliberately disregarded and / or ignored.

59.     Further, Defendant Kenty County and Defendant Family Outreach Center, failed to properly train, discipline, and / or supervise each of their staff, including the individually named Defendants herein, in accordance with the following principles:

a.   That all staff, including the individual Defendants herein, be trained to recognize the warning signs of suicidal behavior and respond appropriately with suicide alerts, proper cell placement with no hanging points or items to use for hanging or self harm, and proper visual and audio monitoring of inmates who may self harm;

b.   That there be an immediate, urgent, predictable, consistent, and mandatory response to any sign or evidence of a recognizable and significant risk of suicide by any prisoner at that jail, for example those enumerated herein and above;

c.   That all medical requests ("kites"), in particular those that are urgent, be read, addressed, and attended to appropriately and promptly;

d.   That when, as here, there is an immediate, significant, and recognizable risk of suicide, immediate and urgent steps must be taken to prevent the suicide;

e.   That there be continuous surveillance of persons evidencing a recognizable and significant risk of suicide;

f.   That through supervision, training and discipline, threats of suicide must be recorded and addressed immediately, consistently, and predictably so that none could be ignored, disregarded, procrastinated, or responded to in a deleterious manner by Kent County Jail staff;

g.   That the failure by Defendant Kent County and Defendant Family Outreach Center agents, officials, and employees, including the individually named Defendants above, to comply with any of these principles, as set forth in the subparagraphs above, would result in consistent disciplinary actions from Defendant Kent County and / or Defendant Family Outreach, as well as responsive supervision and training.

60.     All of the customs, policies and practices described and identified in the paragraphs above and below, as well as the customs, practices and policies of Defendant Kent County and Defendant Family Outreach Center, as set forth herein, were a moving force in the individually named Defendants' failure to respond to Donald Anderson's serious medical needs, which contributed to and / or enabled his death. Those customs, policies, and practices are as follows:

a.  That suicidal and potentially suicidal inmates who entered the jail with Donald Anderson's profile, and / or who subsequently exhibited or expressed feelings of depression or potentially self-destructive behavior while in the Kent County Jail, were not promptly interviewed, properly observed and / or seen by properly qualified / licensed / educated mental health care professionals;

b.  That suicidal and potentially suicidal inmates, such as Donald Anderson, who entered the Kent County Jail depressed, experiencing anxiety or potentially self-destructive behavior while in the Jail, were not routinely placed on suicide watch;

c.  That the routine response to threats of suicide was inconsistent and unpredictable. As a consequence, such threats were regularly ignored by Kent County Jail staff, including the named Defendants, without the constraint of a policy that requires that there be an immediate and urgent response to any recognizable and significant risk of suicide by any inmate at the jail, including Donald Anderson;

d.  That the practice of Defendants not adequately and timely responding to kites from inmates requesting medical help, mental help, or any other assistance from being free of alleged criminal conduct or free from civil rights violations, which all allow the furtherance of being deliberate indifferent to serious medical needs that contribute to unnecessary suffering or death.

e.  That the practice of Defendants allowing inmates with any known suicide history to be evaluated by unqualified counselors and jail staff, without verification by qualified mental health professionals or medical doctors reviewing the evaluation when determining the inmates' mental health level of risk and jail classification allows an inmate to be at a higher risk for suicide and self harm.

f.  That the practice of allowing Defendant Family Outreach Center employees, such as Defendant Smith, the ability to lower a suicide alert or risk of any inmate with prior known suicide history, without the approval or review of a more highly qualified medical professional, supervising medical professional or doctor created a custom that would allow such inmates to be inappropriately classified and subject to be a higher risk for suicide or performing self harm.

61.     As a result of the allegations contained in this complaint, Defendant Kent County, Defendant Sheriff LaJoye-Young, and Defendant Undersheriff Dewitt, in their official capacity are liable under 42 U.S.C. § 1983 for maintaining unconstitutional policies and customs that resulted in the violation of Donald Anderson's clearly established 4th, 8th, and/or 14th Amendment right to adequate medical care. As a direct and proximate result of Defendant Kent County, Defendant Sheriff LaJoye-Young, and Defendant Undersheriff Dewitt's unconstitutional acts and omissions in their official capacity, Donald Anderson experienced extreme physical pain and suffering, severe mental anguish, and death.

62.     As a result of the allegations contained in this complaint, Defendant Family Outreach Center in its official capacity, are liable under 42 U.S.C. § 1983 for maintaining unconstitutional policies and customs that resulted in the violation of Donald Anderson's clearly established 4th, 8th, and/or 14th Amendment right to adequate medical care. As a direct and proximate result of Defendant Family Outreach Center's unconstitutional acts and omissions, in its official capacity, Donald Anderson experienced extreme physical pain and suffering, severe mental anguish, and death.

63.     Donald Andeson did not die immediately, and instead suffered great conscious pain and suffering as a direct and proximate result of the said acts of all named Defendants herein, and the policies and customs of Defendant Kent County and Defendant Family Outreach Center.

64.     The above described conduct of all of the herein Defendants, as specifically set forth above, was the proximate cause of Plaintiff's Decedent Donald Anderson's death and other injuries and damages to him and his Estate, including but not limited to the following:

   a.     Death;

   b.     Reasonable medical, hospital, funeral, and burial expenses;

   c.     Conscious pain and suffering, physical and emotional;

d.      Humiliation and/or mortification;

e.      Mental anguish;

f.      Economic damages;

g.      Loss of love, society, and companionship;

h.      Loss of gifts, gratuities, and other items of economic value;

i.      Parental and spousal guidance, training, and support;

j.      Exemplary, compensatory, and punitive damages allowed under Michigan and federal law;

k.      Attorney fees and costs pursuant to 42 USC § 1988; and

l.      Any and all other damages otherwise recoverable under federal law and the Michigan Wrongful Death Act, MCL 600.2922, et seq.

**COUNT I:**
**§1983 FAILURE TO PROVIDE MEDICAL CARE /**
**DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS**
**IN VIOLATION OF THE 4TH, 8TH, AND/OR 14TH AMENDMENTS**
**OF THE UNITED STATES CONSTITUTION**
**(ALL DEFENDANTS)**

65.     Plaintiff repeats, realleges, and incorporates all other paragraphs of this complaint as if fully set forth herein.

66.     The acts or omissions by all named Defendants in this complaint including: Defendant Kent County, Defendant Sheriff LaJoye-Young, Defendant Undersheriff Dewitt, Defendant Deputy Stack, Unknown Defendant Deputies, Defendant Family Outreach Center, Defendant Smith, Jane Doe and John Doe, were unreasonable and performed knowingly, deliberately, indifferently, intentionally, maliciously, and with callousness, and deliberate indifference to Plaintiff's Decedent, Donald Anderson's well-being and serious medical needs in violation of the 4th, 8th, and 14th Amendments to the United States Constitution.

67.     The Defendants: Defendant Kent County, Defendant Sheriff LaJoye-Young, Defendant Undersheriff Dewitt, Defendant Deputy Stack, Unknown Defendant Deputies, Defendant Family Outreach Center, Defendant Smith, Jane Doe and John Doe, possessed a sufficiently culpable state of mind in denying medical care, proper mental health treatment or housing for Plaintiff's Decedent Donald Anderson who had serious mental and medical needs.

68.     Defendant Kent County and Defendant Family Outreach Center, through its agents and/or employees, and the individually named Defendants stated herein, objectively knew that Donald Anderson had a substantially high risk for suicide, acknowledged by this Court as a "serious medical need", as stated in the above paragraphs and also by the following ways, including, but not limited to:

    a.  Defendant Kent County and Defendant Family Outreach Center and their employees completed an assessment of Donald Anderson during the jail intake, where it was noted that he was positive for psychiatric and/or mental health treatment, positive for mental health illness, positive for serious medical needs,  and positive for current and / or past suicidal ideations with jail alerts indicating same;

    b.  That Donald Anderson had previous known incidents of suicide and /or suicidal ideation;

    c.  That Donald Anderson's serious medical and psychiatric needs were clearly indicated and documented by Defendants, thus establishing that Defendants were aware of his serious medical need;

    d.  That employees and/or agents, such as Defendant Deputy Stack, were repeatedly informed by Ryan Galloway via in person conversation or via kites that Donald Anderson was experiencing suicidal ideations and that he needed mental health help; That employees and / or agents were repeatedly told by Donald Anderson, as witnessed by Ryan Galloway, that he was having suicidal ideations and requested mental health treatment to no avail; That employees were aware of prior suicidal ideations and suicide alerts, all of which are explicit signs of self destructive behavior and increased risk of suicide;

    e.  That employees and/or agents documented that Donald Anderson had psychiatric illness and diagnoses requiring mental health housing and psychiatric evaluation and medications;

    f.  Any other ways which may become known during the course of discovery.

69.    The conduct of Defendant Kent County and Defendant Family Outreach Center, through the individually named Defendants stated herein, all acting within the scope of their employment, exhibited a deliberate indifference, in violation of Donald Anderson's civil rights, and thereby imposed cruel and unusual punishment in violation of his 4th, 8th and 14th Amendment rights in the following ways:

a. Failing to adequately screen and classify Donald Anderson;

b. Failing to adequately screen and classify Donald Anderson by reducing his suicide risk and / or allowing him to be in the general population with inadequate monitoring while knowing that his fragile anxiety and depressed mental state, lack of mental health treatment, and prior suicide ideation alerts, thus being in deliberate disregard of Donald Anderson's suicide risk;

c. Failing to provide and / or maintain mental health housing for Donald Anderson with constant surveillance, smock, and a ligature free environment in deliberate disregard of his suicide risk;

d. Allowing Donald Anderson access to materials that could be used for hanging oneself, such as a sheet or clothing during his incarceration;

e. Failing to care for the basic medical and mental health needs of inmates, specifically Donald Anderson;

f. Failing to timely procure Donald Anderson with a mental health suicide risk assessment from a qualified medial professional or psychiatrist and / or prescribe psychotic medications, in deliberate disregard of Donald Anderson's suicide risk;

g. Failing to continue and perform routine checks on Donald Anderson under close and/or high observation when it was known or should have been known that this observation was required due to his suicidal tendencies;

h. Failing to treat Donald Anderson's deteriorating mental state by seeking immediate medical attention or transfer him to a hospital/mental facility;

i. Failing to provide for appropriate and reasonable medical and/or mental treatment of inmates, including Donald Anderson;

j. Failing to provide inmates, including Donald Anderson, adequate deputies, correction officers, and medical or mental health personnel for inmate supervision;

k. Failing to adequately screen deputies, correction officers, and medical or mental health personnel to determine the level of their competency and performance, both before and after being engaged;

l. Failing to monitor, train, discipline and control deputies, correction officers, and medical or mental health personnel after derelictions in their performance became known, or should have become known;

m. Failing to refrain from intentionally denying or delaying access to appropriate medical care;

n. Failing to provide timely response to inmates' kite requests when asking for medical and mental health treatment;

o. Failing to refrain from acting with gross negligence or deliberate indifference toward or willful disregard of any violation of Donald Anderson's constitutional rights; and

p. Any and all other breaches that become known during the course of discovery.

70. That the above described conduct of the Defendants, as specifically set forth above and below, was the proximate cause of Donald Anderson's death and other injuries and damages to him and his Estate, including but not limited to the following:

a. Death;

b. Reasonable medical, hospital, funeral, and burial expenses;

c. Conscious pain and suffering, physical and emotional;

d. Humiliation and/or mortification;

e. Mental anguish;

f. Economic damages;

g. Loss of love, society, and companionship;

h. Loss of gifts, gratuities, and other items of economic value;

i. Parental and spousal guidance, training, and support;

j. Exemplary, compensatory, and punitive damages allowed under Michigan and federal law;

k.     Attorney fees and costs pursuant to 42 USC § 1988;

l.     Any and all other damages otherwise recoverable under federal law and the Michigan Wrongful Death Act, MCL 600.2922, et seq.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter judgment in her favor and against Defendants, jointly and severally, and award an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars exclusive of costs, interest, attorney fees, as well as punitive and exemplary damages.

<u>**COUNT II:**</u>
<u>**§1983 MUNICIPAL/SUPERVISORY LIABILITY:**</u>
<u>**(DEFENDANT KENT COUNTY, DEFENDANT SHERIFF LaJOYE-YOUNG AND DEFENDANT UNDERSHERIFF DEWITT)**</u>

71.     Plaintiff repeats, realleges, and incorporates all other paragraphs of this complaint as if fully set forth herein.

72.     Defendant Kent County, Defendant Sheriff LaJoye-Young and Defendant Undersheriff Dewitt acted recklessly and/or with deliberate indifference when it practiced and/or permitted customs, policies, and/or practices that resulted in violations to Donald Anderson's constitutional rights of citizens to be free from violations of the 4th, 8th, and 14th Amendments to the United States Constitution. Defendant Kent County is also liable for Defendant Family Outreach Center's unconstitutional customs, policies, and/or practices through the non-delegable duty doctrine.

73.     At all times relevant, Defendant Kent County, Defendant Sheriff LaJoye-Young and Defendant Undersheriff Dewitt refused to provide deputies and agents of the Kent County Sheriff's Department, any training, discipline and supervision with regard to the constitutional rights of citizens to be free from violations of the 4th, 8th, and 14th Amendments to the United States

Constitution; refused to provide said deputies and agents with supervision and discipline to protect the constitutional rights of citizens; refused to require their deputies and agents to follow policies and procedures, and state and federal law relating to the right of a detainee/inmate to be provided with medical care for serious medical needs.

74.     At all times relevant, Defendant Kent County, Defendant Sheriff LaJoye-Young and Defendant Undersheriff Dewitt knew or should have known that the policies, procedures, training supervision and discipline of the deputies and agents of the Kent County Sheriff's Department were inadequate for the tasks that each Defendant was required to perform.

75.     At all times relevant, there was a complete failure to train, supervise and discipline the deputies and agents of the Kent County Sheriff's Department, and the training, supervision and lack of discipline was so reckless that future violations of the constitutional rights of citizens to be free from violations of the 4th, 8th, and 14th Amendments to the United States Constitution, as described in the preceding paragraphs, were certain to occur.

76.     At all times relevant, Defendant Kent County, Defendant Sheriff LaJoye-Young and Defendant Undersheriff Dewitt were on notice and knew that the failure of training, discipline and/or supervision of the deputies and agents of the Kent County Sheriff's Department with regard to the constitutional rights of citizens to be free from violations of the 4th, 8th, and 14th Amendments to the United States Constitution, as described herein, was inadequate and would lead to the violation of detainees/inmates' constitutional rights.

77.     At all times relevant, Defendant Kent County, Defendant Sheriff LaJoye-Young and Defendant Undersheriff Dewitt's response to this knowledge was so inadequate as to show a complete disregard for whether the deputies and agents of the Kent County Sheriff's Department would violate the constitutional rights of citizens to be free from violations of the 4th, 8th, and 14th Amendments to the United States Constitution.

78. Defendant Kent County, Defendant Sheriff LaJoye-Young and Defendant Undersheriff Dewitt implicitly authorized, approved, or knowingly acquiesced in the deliberate indifference to the serious medical needs and cruel and unusual punishment of citizens, and knew or should have known that such treatment would deprive detainees/inmates of their constitutional rights.

79. At all times relevant, there was a clear and persistent pattern of violations of citizens' constitutional rights to be free from violations of the 4th, 8th, and 14th Amendments to the United States Constitution, as described herein.

80. At all times relevant, Defendant Kent County, Defendant Sheriff LaJoye-Young and Defendant Undersheriff Dewitt knew or should have known that there was a clear and persistent pattern of violations of citizens' constitutional rights to be free from violations of the 4th, 8th, and 14th Amendments to the United States Constitution, as described herein.

81. Defendant Kent County, Defendant Sheriff LaJoye-Young and Defendant Undersheriff Dewitt tolerated deputies' and agents' of the Kent County Sheriff's Department repeated violations of the 4th, 8th, and 14th Amendments to the United States Constitution, which allowed all individually named Defendants named herein and other agents to continue to engage in this unlawful conduct.

82. Defendant Kent County, Defendant Sheriff LaJoye-Young and Defendant Undersheriff Dewitt refused to discipline deputies and agents of the Kent County Sheriff's Department who violated citizens' constitutional rights to be free from violations of the 4th, 8th, and 14th Amendments to the United States Constitution, failed to fully investigate allegations of misconduct, looked the other way, and thus, tacitly encouraged such behavior. In doing so, Defendant Kent County, Defendant Sheriff LaJoye-Young and Defendant Undersheriff Dewitt

condoned, ratified, or encouraged said deputies and agents to violate the 4th, 8th, and 14th Amendment to the United States Constitution as a matter of policy.

83.     Facts known to Defendant Kenty County policymakers put them on actual or constructive notice that their policies, practices, customs, acts, and omissions were substantially certain to result in violation of constitutional rights of pretrial detainees / inmates of the Kent County Jail, detailed as follows:

   a.  In 2013, pretrial detainee, Scott Hammer, committed suicide in the Kent County Jail by hanging with his clothing item despite knowing, upon information and belief, that he was at risk for suicide and / or self harm and knowing that he was pending a psychiatric evaluation. Defendant Kent County would not reveal what his suicide alert / watch status was when the matter was reported to media.

   b.  On or about May 5, 2014, pretrial detainee, Ryan Maddox, committed suicide by hanging in the Kent County Jail via a jail issued bedsheet despite his known past suicide attempts, and his known suicidal ideations at the time of his death. His suicide risk, based upon information and belief, was somehow lowered to "medium" as described by Defendant Undersheriff Dewitt despite his well-documented mental illness and past suicide attempts.

   c.  On or about January 11, 2016, pretrial detainee, Djibril Niyomugabo, committed suicide by hanging (pronounced dead on January 13, 2016) in the Kent County Jail via a jail issued bedsheet. Despite, upon information and belief, his delicate mental health, now ranked Defendant Sheriff LaJoye-Young reported to the media that he somehow had a "low risk of committing suicide."

   d.  On or about December 31, 2019, pretrial detainee, Rafael Torres-Mendoza, committed suicide in the Kent County Jail while in general population after, upon information and belief, exhibiting severe mental illness as exhibited by his criminal act of arson on two occasions as he said he had "bad memories" from when he lived there despite having no affiliation with the current residents.

84.     In each of the four (4) prior suicides, Defendant Kent County failed to provide timely access to a qualified mental health provider for psychiatric evaluation; monitoring for foreseeable suicidality based upon reported suicide ideation; and provided unrestricted access to jail issued cloth bedsheets/blankets foreseeably fashioned into ligatures by detainees/inmates reporting suicidal ideation.

85.     In each of the four (4) prior suicides, Defendant Kent County failed to undertake meaningful death investigations consistent with national standards specifically designed to prevent future suicides at the jail.

86.     Following each of the four (4) prior suicides, Defendant Kent County failed to train corrections officers pursuant to nationally recognized standards regarding management of suicidal inmates.

87.     Following each of the four (4) prior suicides, Defendant Kent County failed to implement any written policies or practices including but not limited to, restricting access to jail issued cloth bedsheets or other materials used for hanging for detainee/inmates reporting suicidal ideation.

88.     As a result of the above stated four (4) prior suicides and Donald Anderson's subsequent suicide, Defendant Kent County, Defendant Sheriff LaJoye-Young and Defendant Undersheriff Dewitt continue to allow the herein stated unconstitutional violations as enumerated above and below as evidenced by the very recent suicide of Gabino Balderas, where on May 26, 2023, after being left alone for over 45 minutes he hung himself in a shower with a laundry bag at the Kent County Jail, and was pronounced dead later at the hospital. Despite Mr. Balderas being involuntarily admitted into a psychiatric hospital in May 2022 for 60 days for slitting his wrists in a suicide attempt, and the Defendant Kent County jail personnel having actual knowledge of his past and current severe suicidal ideations, Defendant Sheriff LaJoye-Young and Defendant Undersheriff Dewitt's customs, policies and practices of not adequately screening, monitoring, treating and housing suicidal inmates caused yet another death by being deliberately indifferent to Mr. Balderas' serious medical needs. Defendant Sheriff La-Joye Young once again chose to deflect any culpability for the tragic preventable death by stating workers from Network 180, the county's mental health authority, met with Mr. Balderas before he was found hanging. In an email to a news

reporter, she said his housing assignment was "consistent with the mental health professionals' findings." Once again, family members and the community are unable to fathom how Defendant Kent County, with such a track record for eerily similar inmate suicide cases in the very recent past can once again allow an individual with past suicide attempts and known suicidal ideations be left completely alone with the tools to hang themself continuing to be deliberately indifferent to inmates' serious medical needs.

89.    Defendant Kent County and Defendant Family Outreach Center, failed to properly train, discipline, and / or supervise each of their staff, including the individually named Defendants herein, in accordance with the following principles:

a. That all staff, including the individual Defendants herein, be trained to recognize the warning signs of suicidal behavior and respond appropriately with suicide alerts, proper cell placement with no hanging points or items to use for hanging or self harm, and proper visual and audio monitoring of inmates who may self harm;

b. That there be an immediate, urgent, predictable, consistent, and mandatory response to any sign or evidence of a recognizable and significant risk of suicide by any prisoner at that jail, for example those enumerated herein and above;

c. That all medical / mental health requests ("kites"), in particular those that are urgent, be read, addressed, and attended to appropriately and promptly;

d. That when, as here, there is an immediate, significant, and recognizable risk of suicide, immediate and urgent steps must be taken to prevent the suicide;

e. That there be continuous surveillance of persons evidencing a recognizable and significant risk of suicide;

f. That through supervision, training and discipline, threats of suicide must be recorded and addressed immediately, consistently and predictably so that none could be ignored, disregarded, procrastinated or responded to in deleterious manner by Kent County Jail staff, such as Defendant Deputy Stack's conduct with the knowledge he had of Donald Anderson's suicidal ideation and his need for immediate mental health treatment;

g. That the failure by Defendant Kent County and Defendant Family Outreach Center agents, officials, and employees, including the individually named Defendants above, to comply with any of these principles, as set forth in the subparagraphs

32

above, would result in consistent disciplinary actions from Defendant Kent County and / or Defendant Family Outreach Center, as well as responsive supervision and training.

h. To properly screen and / or be screened by qualified mental health professionals for inmates that suffer from mental health illness, such as suicide, and to be placed in adequate housing and classification.

i. Any and all other breaches that become known during the course of discovery.

90. The need for deputies to be trained in these areas was and remains obvious. Defendant Kent County, Defendant Sheriff LaJoye-Young, and Defendant Undersheriff Dewitt's failure to train their deputies and agents of the Kent County Sheriff's Department as alleged in the preceding paragraph caused Donald Anderson's pain, suffering, and death. The many suicide deaths described above prior to Donald Anderson's death gave notice to these Defendants of said failures. These failures of Defendant Kent County, Defendant Sheriff LaJoye-Young, and Defendant Undersheriff Dewitt caused the death of Donald Anderson and constituted a clear and persistent pattern of misconduct through a custom of inaction.

91. Defendant Kent County, Defendant Sheriff LaJoye-Young, and Defendant Undersheriff Dewitt's further maintained customs, usages, and practices, which violated the constitutional rights of detainees/inmates, such as Donald Anderson, including but not limited to all of the customs, policies and practices described and identified in the paragraphs above and below, as well as the customs, practices and policies of Defendant Kent County and Defendant Family Outreach Center, as set forth below, and were a moving force in the individually named Defendants' failure to respond to Donald Anderson's serious medical needs, which contributed to and / or enabled his death. Those customs, policies, and practices are as follows:

a. That suicidal and potentially suicidal inmates who entered the Kent County Jail with Donald Anderson's profile, and / or who subsequently exhibited or expressed feelings of depression or potentially self-destructive behavior while in the Kent

County Jail, were not promptly interviewed, properly observed and / or seen / evaluated by properly qualified / licensed / educated mental health care professionals;

b. That suicidal and potentially suicidal inmates, such as Donald Anderson, who entered the Kent County Jail as depressed, experiencing anxiety or potentially self-destructive behavior were not routinely placed on adequate suicide watch;

c. That the routine response to threats of suicide was inconsistent and unpredictable. As a consequence, such threats were regularly ignored by Kent County Jail staff, including the named Defendants, without the constraint of a policy that requires that there be an immediate and urgent response to any recognizable and significant risk of suicide by any inmate at the jail, including Donald Anderson;

d. That the practice of Defendants not adequately and timely responding to kites from inmates requesting medical or mental help or any other assistance from being free of alleged criminal conduct or free from civil rights violations, which all allow the furtherance of being deliberately indifferent to serious medical needs that contribute to unnecessary suffering or death.

e. That the practice of Defendants allowing inmates with any known suicide history to be evaluated by unqualified counselors and jail staff, without verification by qualified mental health professionals or medical doctors reviewing the evaluation when determining the inmates' mental health level of risk and jail classification which allows an inmate to be at a higher risk for suicide and self harm.

f. That the practice of allowing Defendant Family Outreach Center employees, such as Defendant Smith, the ability to lower a suicide alert or risk of any inmate with prior known suicide history, without the approval or review of a more highly qualified medical professional, supervising medical professional or doctor created a custom that would allow such inmates to be inappropriately classified and be subject to a higher risk for completing suicide or performing self harm.

92. Defendant Kent County, Defendant Sheriff LaJoye-Young, and Defendant Undersheriff Dewitt allowed Defendant Family Outreach Center to continue its ongoing practice of substandard medical care and / or mental health care, putting the lives of its detainees/inmates at risk. Defendant Kent County, Defendant Sheriff LaJoye-Young, and Defendant Undersheriff Dewitt's ratified Defendant Family Outreach Center's behavior and unconstitutional conduct by continuing to extend Defendant Family Outreach Center's contract for jail medical / mental health services at the Kent County Jail despite having notice and/or being constructively aware that

Defendant Family Outreach Center had a history of providing constitutionally inadequate medical / mental health care to detainees/inmates in the past and thus tacitly approved such unconstitutional conduct. Their deliberate indifference in their failure to act amounted to an official policy of inaction and the policy of inaction was the moving force of constitutional deprivations. Defendant Kent County is also liable for Defendant Family Outreach Center's unconstitutional customs, policies, and/or practices through the non-delegable duty doctrine.

93. Defendant Kent County, Defendant Sheriff LaJoye-Young, and Defendant Undersheriff Dewitt's have the responsibility and authority to investigate the death of any detainees/inmates in the custody of the Kent County Sheriff's Department and/or the Kent County Jail, and as a matter of acts, custom, policy, and/or practice, Defendants have established a custom and/or policy to conduct purposefully meaningless criminal investigations for their in-custody deaths as it relates to their own deputies and jail medical / mental health staff, as illustrated in this case as well as in the many other suicide matters stated above, where no criminal liability was deemed against deputies and/or jail medical / mental health staff. The custom and policy of procuring a meaningless investigation to deflect negative publicity and/or liability occurred in this and the above stated matters.

94. Plaintiff's injuries in this case were proximately caused by policies and practices of Defendant Kent County, Defendant Sheriff LaJoye-Young, and Defendant Undersheriff Dewitt, which by their deliberate indifference, allows their deputies to violate the constitutional rights of citizens without fear of any meaningful investigation or punishment. In this way, Defendant Kent County, Defendant Sheriff LaJoye-Young and Defendant Undersheriff Dewitt's violated Plaintiff's rights since they created the opportunity for the individually named Defendants to commit the foregoing constitutional violations.

95. The misconduct described in preceding paragraphs has become a widespread practice, and so well settled as to constitute *de facto* policy in the Kent County Sheriff's Department. This policy was able to exist and thrive because governmental policymakers have exhibited deliberate indifference to the problem, thereby ratifying it.

96. The widespread practice described in preceding paragraphs was allowed to flourish because Defendant Kent County, Defendant Sheriff LaJoye-Young and Defendant Undersheriff Dewitt have declined to implement sufficient hiring, training and/or legitimate and/or effective mechanisms for oversight and/or punishment of police officer misconduct.

97. The policies and practices of Defendant Kent County, Defendant Sheriff LaJoye-Young and Defendant Undersheriff Dewitt directly and proximately led to the injuries and death that Donald Anderson suffered at the hands of Defendants.

98. The above described conduct of Defendant Kent County, Defendant Sheriff LaJoye-Young, and Defendant Undersheriff Dewitt, as set forth above, was the proximate cause of Donald Anderson's death and other injuries and damages to him and his Estate, including but not limited to the following:

a.   Death;

b.   Reasonable medical, hospital, funeral, and burial expenses;

c.   Conscious pain and suffering, physical and emotional;

d.   Humiliation and/or mortification;

e.   Mental anguish;

f.   Economic damages;

g.   Loss of love, society, and companionship;

h.   Loss of gifts, gratuities, and other items of economic value;

i.   Parental and spousal guidance, training, and support;

j.      Exemplary, compensatory, and punitive damages allowed under Michigan and
federal law;

k.      Attorney fees and costs pursuant to 42 USC § 1988;

l.      Any and all other damages otherwise recoverable under federal law and the
Michigan Wrongful Death Act, MCL 600.2922, et seq.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter judgment in
her favor and against Defendants, jointly and severally, and award an amount in excess of Seventy-
Five Thousand ($75,000.00) Dollars exclusive of costs, interest, attorney fees, as well as punitive
and exemplary damages.

**COUNT III:**
**§1983 MUNICIPAL/SUPERVISORY LIABILITY:**
**(DEFENDANT FAMILY OUTREACH CENTER)**

99.     Plaintiff repeats, realleges, and incorporates all other paragraphs of this complaint
as if fully set forth herein.

100.    Defendant Family Outreach Center acted recklessly and/or with deliberate
indifference when it practiced and/or permitted customs, policies, and/or practices that resulted in
violations to Donald Anderson's constitutional rights of citizens to be free from violations of the
4th, 8th, and 14th Amendments to the United States Constitution.

101.    At all times relevant, Defendant Family Outreach Center, refused to provide their
employees and agents any training, discipline, and supervision with regard to the constitutional
rights of detainees/inmates who suffer from serious medical and / or mental health needs, and to
be free from violations of the 4th, 8th, and 14th Amendments to the United States Constitution;

102.    At all times relevant, Defendant Family Outreach Center knew or should have
known that the policies, procedures, training supervision and discipline of the employees and

agents of Defendant Family Outreach Center were inadequate for the tasks that each Defendant was required to perform.

103.     At all times relevant, there was a complete failure to train, supervise and discipline the employees and agents of Defendant Family Outreach Center, and the training, supervision and lack of discipline were so reckless that future violations of the constitutional rights of detainees/inmates to be free from violations of the 4th, 8th, and 14th Amendments to the United States Constitution, as described in the preceding paragraphs, were certain to occur.

104.     At all times relevant, Defendant Family Outreach Center was on notice and knew that the failure of training, discipline and/or supervision of the employees and agents of Defendant Family Outreach Center with regard to the constitutional rights of citizens to be free from violations of the 4th, 8th, and 14th Amendments to the United States Constitution, as described in the preceding paragraphs, was inadequate and would lead to the violation of detainees/inmates' constitutional rights.

105.     At all times relevant, Defendant Family Outreach Center's response to this knowledge was so inadequate as to show a complete disregard for whether the employees and agents of Defendant Family Outreach Center would violate the constitutional rights of citizens to be free from violations of the 4th, 8th, and 14th Amendments to the United States Constitution.

106.     Defendant Family Outreach Center implicitly authorized, approved, or knowingly acquiesced in the deliberate indifference to the serious medical needs and cruel and unusual punishment of citizens.

107.     At all times relevant, there was a clear and persistent pattern of violations of citizens' constitutional rights to be free from violations of the 4th, 8th, and 14th Amendments to the United States Constitution, as described in the preceding and below paragraphs.

108. At all times relevant, Defendant Family Outreach Center knew or should have known that there was a clear and persistent pattern of violations of citizens' constitutional rights to be free from violations of the 4th, 8th, and 14th Amendments to the United States Constitution, as described in the preceding paragraphs.

109. Defendant Family Outreach Center tolerated the employees' and agents' of Defendant Family Outreach Center's repeated violations of the 4th, 8th, and 14th Amendments to the United States Constitution, which allowed said employees and agents to continue to engage in this unlawful conduct.

110. Defendant Family Outreach Center refused to discipline the employees and agents of Defendant Family Outreach Center who violated citizens' constitutional rights to be free from violations of the 4th, 8th, and 14th Amendments to the United States Constitution, failed to fully investigate allegations of misconduct, looked the other way, and thus, tacitly encouraged such behavior. In doing so, Defendant Family Outreach Center condoned, ratified, or encouraged said employees/agents to violate the 4th, 8th, and 14th Amendment to the United States Constitution as a matter of policy.

111. Defendant Family Outreach Center, failed to properly train, discipline, and / or supervise each of their staff, including the individually named Defendants herein, in accordance with the following principles:

     a. That all staff, including the individual Defendants herein, be trained to recognize the warning signs of suicidal behavior and respond appropriately with suicide alerts, proper cell placement with no hanging points or items to use for hanging or self harm, and proper visual and audio monitoring of inmates who may self harm;

     b. That there be an immediate, urgent, predictable, consistent, and mandatory response to any sign or evidence of a recognizable and significant risk of suicide by any prisoner at that jail, for example those enumerated herein and above;

     c. That all medical requests ("kites"), in particular those that are urgent, be read, addressed, and attended to appropriately and promptly;

d.  That when, as here, there is an immediate, significant, and recognizable risk of suicide, immediate and urgent steps must be taken to prevent the suicide;

e.  That there be continuous surveillance of persons evidencing a recognizable and significant risk of suicide;

f.  That through supervision, training and discipline, threats of suicide must be recorded and addressed immediately, consistently, and predictably so that none could be ignored, disregarded, procrastinated, or responded to in deleterious manner by staff;

g.  That the failure by Defendant Family Outreach Center agents, officials, and employees, including the individually named Defendants above, to comply with any of these principles, as set forth in the subparagraphs above, would result in consistent disciplinary actions from Defendant Family Outreach Center, as well as responsive supervision and training.

h.  To properly screen and / or be screened by qualified mental health professionals for inmates that suffer from mental health illness, such as suicide, and to be placed in adequate housing and classification.

i.  Any and all other breaches that become known during the course of discovery.

112.    The need for medical and / or mental health personnel to be trained in these areas was and remains obvious. Defendant Family Outreach's failure to train the employees and/or agents of Defendant Family Outreach Center as alleged in the preceding paragraphs caused Donald Anderson's pain, suffering, and death. The many in custody suicide deaths described above prior to Donald Anderson's death gave notice to these Defendants of said failures. These failures of Defendant Family Outreach Center caused the death of Donald Anderson and constituted a clear and persistent pattern of misconduct through a custom of inaction.

113.    Defendant Family Outreach Center further maintained customs, usages, and practices which violated the constitutional rights of detainees/inmates, such as Donald Anderson, including but not limited to all of the customs, policies, and practices described and identified in the paragraphs above and below, as well as the customs, practices and policies of Defendant

Family Outreach Center, as set forth below, were a moving force in the individually named Defendants' failure to respond to Donald Anderson's serious medical needs, which contributed to and / or enabled his death. Those customs, policies, and practices are as follows:

    a. That suicidal and potentially suicidal inmates who entered the Kent County Jail with Donald Anderson's profile, and / or who subsequently exhibited or expressed feelings of depression or potentially self-destructive behavior while in the Kent County Jail, were not promptly interviewed, properly observed and / or seen / evaluated by properly qualified / licensed / educated mental health care professionals;

    b. That suicidal and potentially suicidal inmates, such as Donald Anderson, who entered the Kent County Jail as depressed, experiencing anxiety or potentially self-destructive behavior while in the Jail, were not routinely placed on suicide watch;

    c. That the routine response to threats of suicide was inconsistent and unpredictable. As a consequence, such threats were regularly ignored by Kent County Jail staff, including the named Defendants, without the constraint of a policy that requires that there be an immediate and urgent response to any recognizable and significant risk of suicide by any inmate at the jail, including Donald Anderson;

    d. That the practice of Defendants not adequately and timely responding to kites from inmates requesting medical or mental help or any other assistance from being free of alleged criminal conduct or free from civil rights violations, which all allow the furtherance of being deliberately indifferent to serious medical needs that contribute to unnecessary suffering or death.

    e. That the practice of Defendants of allowing inmates with any known suicide history to be evaluated by unqualified counselors and jail staff, without verification by qualified mental health professionals or medical doctors reviewing the evaluation when determining the inmates' mental health level of risk and jail classification which allows an inmate to be at a higher risk for suicide and self harm.

    f. That the practice of allowing Defendant Family Outreach Center employees, such as Defendant Smith, the ability to lower a suicide alert or risk of any inmate with prior known suicide history, without the approval or review of a more highly qualified medical professional, supervising medical professional, or doctor created a custom that would allow such inmates to be inappropriately classified and be subject to be a higher risk for completing a suicide or performing self harm.

    114. Plaintiff's injuries in this case were proximately caused by policies and practices of Defendant Family Outreach Center which by its deliberate indifference, allows their employees to violate the constitutional rights of citizens without fear of any meaningful investigation or

punishment. In this way, Defendant Family Outreach Center violated Donald Anderson's rights since they created the opportunity for the individually named Defendants to commit the foregoing constitutional violations.

115.    Donald Anderson's injuries in this case were proximately caused by policies and practices of Defendant Family Outreach Center, which by its deliberate indifference, allows its agents and employees to violate the constitutional rights of citizens without fear of any meaningful investigation or punishment. In this way, Defendant Family Outreach Center violated Donald Anderson's rights since it created the opportunity for its agents, such as Defendant Smith, to commit the foregoing constitutional violations.

116.    The misconduct described in preceding paragraphs has become a widespread practice, and so well settled as to constitute *de facto* policy in the practices of Defendant Family Outreach Center. This policy was able to exist and thrive because governmental policymakers have exhibited deliberate indifference to the problem, thereby ratifying it.

117.    The widespread practice described in preceding paragraphs was allowed to flourish because Defendant Family Outreach Center has declined to implement sufficient hiring, training and/or legitimate and/or effective mechanisms for oversight and/or punishment of medical and / or mental health personnel misconduct.

118.    The policies and practices of Defendant Family Outreach Center directly and proximately led to the injuries and death that Donald Anderson suffered at the hands of Defendants.

119.    These unconstitutional policies existed for at least one year prior, when upon information and belief Defendant Family Outreach Center utilized the same policy/customs directly resulting in the death of other inmates, as described above.

120.    Defendant Family Outreach Center has engaged in a pattern or practice or custom of unconstitutional conduct toward confined persons such as Donald Anderson with serious

medical needs. This included a pattern, practice, or custom of not providing medical/ mental health care, or emergency care when necessary, on a timely basis, so as to alleviate an inmate's unnecessary pain or to alleviate their risk of substantial harm. This included a pattern, practice, or custom of not securing medical / mental health care for detainees/inmates who are suffering from past or current suicidal ideations, mental health illness or behavioral problems, untreated mental health issues, improper classification of inmates for housing and monitoring, not providing qualified mental health evaluations at booking or thereafter of inmates who suffer[ed] from suicidal ideations and / or mental health issues, along with the many other practices as stated above.

121.    The policies and practices of Defendant Family Outreach directly and proximately led to the injuries and death that Donald Anderson suffered at the hands of Defendant Family Outreach Center.

122.    The above described conduct of the Defendants, as specifically set forth above, was the proximate cause of Donald Anderson's death and other injuries and damages to him and his Estate, including but not limited to the following:

    a.    Death;

    b.    Reasonable medical, hospital, funeral, and burial expenses;

    c.    Conscious pain and suffering, physical and emotional;

    d.    Humiliation and/or mortification;

    e.    Mental anguish;

    f.    Economic damages;

    g.    Loss of love, society, and companionship;

    h.    Loss of gifts, gratuities, and other items of economic value;

    i.    Parental and spousal guidance, training, and support;

j.     Exemplary, compensatory, and punitive damages allowed under Michigan and federal law;

k.     Attorney fees and costs pursuant to 42 USC § 1988;

l.     Any and all other damages otherwise recoverable under federal law and the Michigan Wrongful Death Act, MCL 600.2922, et seq.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter judgment in her favor and against Defendants, jointly and severally, and award an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars exclusive of costs, interest, attorney fees, as well as punitive and exemplary damages.

## COUNT IV:
## STATE LAW CLAIMS OF
## GROSS NEGLIGENCE, AND/OR WANTON AND WILLFUL MISCONDUCT
## (ALL DEFENDANTS)

123.    Plaintiff repeats, realleges, and incorporates all other paragraphs of this complaint as if fully set forth herein.

124.    In taking custody of Donald Anderson, all Defendants undertook and owed a duty to him to make reasonable efforts to care for him in a reasonable and prudent manner, to exercise due care and caution, and in such operation as the rules of the common law require, and in accordance with the customs, policies, and procedures.

125.    All Defendants breached each and every duty owed to Donald Anderson.

126.    Notwithstanding the aforementioned duties, the aforementioned Defendants took into custody, incarcerated, and monitored Donald Anderson in an extremely careless, grossly negligent, reckless, and wanton and willful manner without concern whatsoever for his safety and welfare, and failed to tend to his serious medical needs, including, but not limited to, the following

particulars by way of illustration and not limitation as described in the above paragraphs and adopted herein:

   a. That suicidal and potentially suicidal inmates who entered the Kent County Jail with Donald Anderson's profile, and / or who subsequently exhibited or expressed feelings of depression or potentially self-destructive behavior while in the Kent County Jail, were not promptly interviewed, properly observed and / or seen / evaluated by properly qualified / licensed / educated mental health care professionals;

   b. That suicidal and potentially suicidal inmates, such as Donald Anderson, who entered the Kent County Jail as depressed, experiencing anxiety or potentially self-destructive behavior were not routinely placed on adequate suicide watch;

   c. That the routine response to threats of suicide was inconsistent and unpredictable. As a consequence, such threats were regularly ignored by Kent County Jail staff, including the named Defendants, without the constraint of a policy that requires that there be an immediate and urgent response to any recognizable and significant risk of suicide by any inmate at the jail, including Donald Anderson;

   d. That the practice of Defendants not adequately and timely responding to kites from inmates requesting medical or mental help or any other assistance from being free of alleged criminal conduct or free from civil rights violations, which all allow the furtherance of being deliberately indifferent to serious medical needs that contribute to unnecessary suffering or death.

   e. That the practice of Defendants allowing inmates with any known suicide history to be evaluated by unqualified counselors and jail staff, without verification by qualified mental health professionals or medical doctors reviewing the evaluation when determining the inmates' mental health level of risk and jail classification which allows an inmate to be at a higher risk for suicide and self harm.

   f. That the practice of allowing Defendant Family Outreach Center employees, such as Defendant Smith, the ability to lower a suicide alert or risk of any inmate with prior known suicide history, without the approval or review of a more highly qualified medical professional, supervising medical professional or doctor created a custom that would allow such inmates to be inappropriately classified and be subject to a higher risk for completing suicide or performing self harm.

127. That the above-described actions and/or inactions violated MCL 691.1407 in that they amounted to gross negligence, specifically conduct so reckless as to demonstrate a substantial disregard for whether an injury resulted to Donald Anderson.

128.    That Defendants are not entitled to governmental immunity based upon their actions.

129.    That the above described conduct of the Defendants, as specifically set forth above, was the proximate cause of Donald Anderson's death and other injuries and damages to him and his Estate, including but not limited to the following:

a.    Death;

b.    Reasonable medical, hospital, funeral, and burial expenses;

c.    Conscious pain and suffering, physical and emotional;

d.    Humiliation and/or mortification;

e.    Mental anguish;

f.    Economic damages;

g.    Loss of love, society, and companionship;

h.    Loss of gifts, gratuities, and other items of economic value;

i.    Parental and spousal guidance, training, and support;

j.    Exemplary, compensatory, and punitive damages allowed under Michigan and federal law;

k.    Attorney fees and costs if applicable;

l.    Any and all other damages otherwise recoverable under federal law and the Michigan Wrongful Death Act, MCL 600.2922, et seq.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter judgment in her favor and against Defendants, jointly and severally, and award an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars exclusive of costs, interest, attorney fees, as well as punitive and exemplary damages.

Respectfully submitted,


By:    /s/ Marcel S. Benavides
Marcel S. Benavides, P69562
Attorney for PLAINTIFF
801 W. Eleven Mile Road, Ste. 130
Royal Oak, MI 48067
(248) 549-8555
benavideslaw@att.net

/s/ Matthew S. Kolodziejski
Matthew S. Kolodziejski, P71068
Attorney for PLAINTIFF
200 E. Big Beaver Road
Troy, MI 48083
(313) 736-5060
mattkolo@comcast.net



Dated: February 12, 2024

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**

---

SALLY KIRKWOOD, Personal Representative
of the ESTATE OF DONALD JOHN ANDERSON, Deceased

    PLAINTIFF

    -vs-                                           Case No.

                                                     HON.

COUNTY OF KENT, a municipal corporation, and
SHERIFF MICHELLE LAJOYE-YOUNG;
UNDERSHERIFF CHARLES DEWITT;
DEPUTY MICHAEL STACK;
THE FAMILY OUTREACH CENTER;
CHAYENNE SMITH;
and other UNKNOWN DEPUTIES;
JANE DOE; and JOHN DOE;
Individually, and in their official / supervisory capacities,
Jointly and Severally,

    DEFENDANTS.                          JURY TRIAL DEMANDED
_____/

**MARCEL S. BENAVIDES (P69562)**
THE MARCEL S. BENAVIDES LAW OFFICE PLLC
Attorney for PLAINTIFF
801 West Eleven Mile Rd. Ste. 130
Royal Oak, MI 48067
(248) 549-8555
benavideslaw@att.net

**MATTHEW S. KOLODZIEJSKI (P71068)**
LAW OFFICE OF MATTHEW S. KOLODZIEJSKI PLLC
Attorney for PLAINTIFF
200 E. Big Beaver Road
Troy, MI 48083
(313) 736-5060
mattkolo@comcast.net
_____/

## PLAINTIFF DEMANDS A TRIAL BY JURY

**NOW COMES** the PLAINTIFF, Sally Kirkwood, as Personal Representative for the Estate of Donald John Anderson, deceased ("Donald Anderson"), and through her attorneys, **MARCEL S. BENAVIDES** and **MATTHEW S. KOLODZIEJSKI**, and demands a trial by jury in this matter.

Respectfully submitted,

By:  /s/ Marcel S. Benavides
Marcel S. Benavides, P69562
Attorney for PLAINTIFF
801 W. Eleven Mile Road, Ste. 130
Royal Oak, MI 48067
(248) 549-8555
benavideslaw@att.net

/s/ Matthew S. Kolodziejski
Matthew S. Kolodziejski, P71068
Attorney for PLAINTIFF
200 E. Big Beaver Road
Troy, MI 48083
(313) 736-5060
mattkolo@comcast.net

Dated: February 12, 2024