# Exhibit A

Case 1:24-cv-00141-PJG    ECF No. 15-1,    PageID.105    Filed 04/15/24    Page 2 of 17

Butler v. Pickell, Not Reported in Fed. Supp. (2021)
2021 WL 3566276

2021 WL 3566276
Only the Westlaw citation is currently available.
United States District Court, E.D.
Michigan, Northern Division.

Anthony Michael BUTLER, and
Dylan John Earick, Plaintiffs,
v.
Robert PICKELL, et al., Defendants.

Case No. 1:21-cv-10817
|
Signed 08/12/2021

**Attorneys and Law Firms**

Anthony Michael Butler, Flint, MI, Pro Se.

Dylan John Earick, Flint, MI, Pro Se.

### OPINION AND ORDER OF PARTIAL SUMMARY DISMISSAL AND DIRECTING PLAINTIFF BUTLER TO PROVIDE ADDITIONAL COPIES OF COMPLAINT

THOMAS L. LUDINGTON, United States District Judge

**\*1** This is a civil rights action brought by pro se plaintiffs Anthony Michael Butler and Dylan John Earick pursuant to 42 U.S.C. § 1983. When the case was filed in March 2021, Plaintiffs were pre-trial detainees confined in the Genesee County Jail in Flint, Michigan. On July 7, 2021, Plaintiff Butler was granted *in forma pauperis* status. ECF No. 5. Plaintiffs name as Defendants the current and former sheriffs of Genesee County, jail administrators, the Genesee County Sheriff's Department, and the County of Genesee. Plaintiffs allege that Defendants installed an audio and video surveillance system in the jail which has recorded Plaintiffs' confidential attorney-client meetings. Plaintiffs seek injunctive relief, money damages, and the dismissal of charges against them.

As explained below, Plaintiff Earick's Complaint will be dismissed without prejudice. Defendant Genesee County Sheriff's Department will be dismissed from the case. Plaintiff Butler's claims may proceed against all other Defendants, and he will be directed to provide copies of the Complaint to the Court so that Defendants may be served.

### I.

Plaintiffs list as Defendants Former County Sheriff Robert Pickell, Current Sheriff Christopher Swanson, Undersheriff Michael Tocarchick, Captain Jason Gould, the Genesee County Sheriff's Department, and the County of Genesee in their official and individual capacities.

Plaintiffs allege Defendants are responsible for the installation of a new surveillance system which began recording in October 2017. ECF No. 1 at PageID.3. Cameras and microphones "were installed in areas where Attorney-client consultations regularly occur." *Id.* Plaintiffs assert that attorney-client meetings were recorded until at least February 2021, and that the recordings provided the prosecution access to "privileged consultations ... [including] facts of the case and sensitive information such as trial strategy." *Id.*

Plaintiffs further allege that because the jail is a public facility, the recordings are subject to release under the Freedom of Information Act. *Id.* In support, Plaintiffs contend that a private citizen was able to obtain such records. *Id.* at PageID.7. They allege the existence of evidence associated with two attorney-client meetings in October 2020. *Id.* at PageID.5.

Plaintiffs seek $12,500,000 for each violation of their constitutional rights, totaling $100 million. ECF No. 1 at PageID.6. They also request injunctive relief against the Genesee County Jail, to "prevent[ ] further intrusion upon Attorney-client privileged communications." *Id.* Finally, Plaintiffs seek the dismissal of any charges against them for which they would have sought legal counsel between May 2019 and February 2021.

### II.

Under the Prison Litigation Reform Act ("PLRA"), the Court is required to dismiss *sua sponte* an *in forma pauperis* complaint before service if it determines that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b). The dismissal standard under the PLRA is equivalent to that of Federal Rule of Civil Procedure 12(b)(6), as clarified by *Ashcroft v. Iqbal*, 556 U.S.

Case 1:24-cv-00141-PJG    ECF No. 15-1,    PageID.106    Filed 04/15/24    Page 3 of 17

**Butler v. Pickell, Not Reported in Fed. Supp. (2021)**
2021 WL 3566276

662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). See *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). When evaluating a complaint under that standard, courts "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations as true, and examine whether the complaint contains 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.' " *Hill v. Snyder*, 878 F.3d 193, 203 (6th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678).

**\*2** Federal Rule of Civil Procedure 8(a) requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," as well as "a demand for the relief sought." Fed. R. Civ. P. 8(a)(2), (3). "[D]etailed allegations" are not necessary, but under Rule 8(a) the pleading must 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Courts need not "accept as true a legal conclusion couched as a factual allegation[,]" and any "naked assertion[s]" require "further factual enhancement" to comply with Rule 8(a). *Id.* at 555, 557. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard ... asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 570).

A pro se civil rights complaint is to be construed liberally. *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). And such a complaint " 'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]' " *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

To state a civil rights claim under 42 U.S.C. § 1983, "a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (citation omitted). A plaintiff must allege "more than just mere negligence." *Fisher v. City of Memphis*, 234 F.3d 312, 317 (6th Cir. 2000) (citing *Collins v. City of Harker Heights*, 503 U.S. 115 (1992)) (other citation omitted). In addition, the plaintiff must allege that "the defendants were personally involved in the alleged deprivation of federal rights." *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (citing *Hall v. United States*, 704 F.2d 246, 251 (6th Cir. 1983)).

### III.

#### A.

Section 1983 imposes liability on any "person" who violates an individual's federal constitutional or statutory rights. It is well-settled under Michigan law that county jails and sheriff's departments are not legal entities amenable to suit under 42 U.S.C. § 1983. *Vine v. Cty. of Ingham*, 884 F. Supp. 1153, 1158 (W.D. Mich. 1995) (citations omitted); *see also Petty v. County of Franklin, Ohio, et al.*, 478 F.3d 341, 347 (6th Cir. 2007), *abrogation on other grounds recognized by Bailey v. City of Ann Arbor*, 860 F.3d 382, 389 (6th Cir. 2017) (county sheriff's department is not a "person" subject to liability under § 1983); *Taghon v. Bailey*, No. 1:20-CV-373, 2020 WL 2315748, at \*3 (W.D. Mich. May 11, 2020) (county is the proper party to sue, because sheriff is simply an agent of the county); *Edwards v. Jail*, No. 2:16-CV-11596, 2016 WL 2937146, at \*2 (E.D. Mich. May 20, 2016) (Roberts, J.).

Accordingly, the Complaint will be dismissed as to Defendant Genesee County Sheriff's Department.

#### B.

There are "pervasive impracticalities associated with multiple-plaintiff prisoner litigation, which militates against permissive joinder even" when otherwise permitted by the Federal Rules of Civil Procedure. *Proctor v. Applegate*, 661 F. Supp. 2d 743, 780 (E.D. Mich. 2009) (citing *Boretsky v. Corzine*, Case No. 08-2265, 2008 WL 2512916, at \*5 (D.N.J. June 23, 2008)). Problems arising from such litigation include the "need for each plaintiff to sign every pleading, and the consequent possibilities that documents may be changed as they are circulated, or that prisoners may seek to compel prison authorities to permit them to gather to discuss the joint litigation." *Id.*

**\*3** Further, "jail populations are notably transitory, making joint litigation difficult." *Id.*; *see also White v. Tennessee Bd. of Probation and Paroles*, No. 2007 WL 1309402 (W.D. Tenn. May 3, 2007) ("[I]t is administratively impractical to permit five inmates at three institutions to litigate their claims in

Case 1:24-cv-00141-PJG    ECF No. 15-1,    PageID.107    Filed 04/15/24    Page 4 of 17

**Butler v. Pickell, Not Reported in Fed. Supp. (2021)**
2021 WL 3566276

a single action."). Other courts have pointed to the "need for resolution of individualized questions of fact and law surrounding the requirement for exhaustion of administrative remedies under 42 U.S.C. § 1997e(a)." *Proctor*, 661 F. Supp. 2d at 780 (citations omitted). Prisoners are simply "not in the same situation as non-prisoner joint plaintiffs; prisoners' circumstances make joint litigation exceptionally difficult." *Id.*

Multiple-plaintiff prisoner litigation is also complicated by the requirement that each plaintiff pay the filing fee or file an application to proceed *in forma pauperis*. Although the PLRA does not specify how fees are to be assessed when multiple prisoners file a joint complaint, in the Sixth Circuit, fees and costs are generally divided equally between the plaintiffs. *In Re Prison Litigation Reform Act*, 105 F. 3d 1131, 1137–38.[1] The Sixth Circuit's approach "creates difficult problems of apportionment when some plaintiffs have funds in their trust accounts, others do not, and still others have 'struck out' under § 1915(g) and can no longer proceed *in forma pauperis*." *Boriboune v. Berge*, 391 F.3d 852, 855 (7th Cir. 2004). Furthermore, individual plaintiffs in multiple-plaintiff prisoner case may be prejudiced by other plaintiffs' delay or failure to correct deficiencies in their *in forma pauperis* applications or other filings. *See*, *e.g.*, *Calhoun v. Washington*, No. 21-10476, 2021 WL 1387782, at *2 (E.D. Mich. Apr. 13, 2021) (Cleland, J.); *Teague v. City of Flint*, No. 2:21-CV-10468, 2021 WL 1238130, at *2 (E.D. Mich. Apr. 2, 2021) (Steeh, J.). In the current case, Plaintiff Earick filed his inmate account history report but failed to file an application to proceed *in forma pauperis*. ECF No. 2.

[1] Although courts in this district rely on *In re PLRA* for the proportionate share rule, *see*, *e.g.*, *McLaurin v. Bagley*, No. CV 2:17-11263, 2017 WL 1738031, at *2 (E.D. Mich. May 4, 2017) (Roberts, J.) (citations omitted), other circuits require each prisoner in a multiple plaintiff action pay the entire amount of the filing fee rather than allocate proportionate shares. *See*, *e.g.*, *Hagan v. Rogers*, 570 F. 3d 146, 155-56 (3rd Cir. 2009); *Boriboune v. Berge*, 391 F.3d 852, 855-56 (7th Cir. 2004). District courts in the Sixth Circuit outside Michigan have also called the proportionate share convention into question. *See*, *e.g.*, *Montague v. Schofield*, No. 2:14-CV-292, 2015 WL 1879590, at *3 (E.D. Tenn. Apr. 22, 2015); *Jones v. Fletcher*, No. A.05CV07-JMH, 2005 WL 1175960, at *6 (E.D. Ky. May 5, 2005).

The court can dismiss misjoined parties from an action, but misjoinder is generally not sufficient to dismiss an entire case. *See Proctor*, 661 F. Supp. 2d at 781 (citing Fed. R. Civ. P. 21). Thus, the best option available to the Court is to sever Plaintiff Butler's case from Plaintiff Earick's and dismiss Plaintiff Earick from the Complaint without prejudice. Earick may file his individual claims in a separate complaint.

### C.

Aside from the dismissal of Defendant Genesee County Sheriff's Department, which is not a proper party under § 1983, Plaintiff Butler's claims are not frivolous and the Complaint states at least one cognizable claim. "The attorney-client privilege is one of the oldest recognized privileges for confidential communications." *Swidler & Berlin v. United States*, 524 U.S. 399, 403, (1998) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981); *Hunt v. Blackburn*, 128 U.S. 464, 470 (1888)). The Court explained further that "[t]he privilege is intended to encourage 'full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice.' " *Id.* (citing *Upjohn*, 449 U.S. at 389).

**\*4** The Sixth Circuit has observed that "[i]t is well-settled that a chilling effect on one's constitutional rights constitutes a present injury in fact." *Muhammad v. Pitcher*, 35 F.3d 1081, 1084 (6th Cir. 1994) (citing *G & V Lounge v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1076 (6th Cir. 1994); *NAACP v. Button*, 371 U.S. 415, 433 (1963)). The Second Circuit vacated a district court order when the lower court "failed to consider any chilling effect" that jail surveillance had on the plaintiffs' right to counsel. *Grubbs v. O'Neill*, 744 F. App'x 20, 23 (2d Cir. 2018) (citing *Wolff v. McDonnell*, 418 U.S. 539, 577 (1974)).

Accordingly, service of the Complaint is appropriate. However, the Court may not, at this time, direct service of the Complaint because Plaintiff has failed to file with the Court a sufficient number of copies for service. *See* Fed R. Civ. P. 4(c)(1) ("The plaintiff ... must furnish the necessary copies to the person who makes service."). Plaintiff Butler will be ordered to provide the necessary copies.

Case 1:24-cv-00141-PJG   ECF No. 15-1,   PageID.108   Filed 04/15/24   Page 5 of 17

**Butler v. Pickell, Not Reported in Fed. Supp. (2021)**
2021 WL 3566276

## IV.

Accordingly, it is **ORDERED** that Defendant Genesee County Sheriff's Department is **DISMISSED WITH PREJUDICE** as to all claims.

It is further **ORDERED** that Plaintiff Earick is **DISMISSED** from this action **WITHOUT PREJUDICE**. Plaintiff Earick may file an individual complaint provided that he includes both an application to proceed *in forma pauperis* and a copy of his inmate account history report.

It is further **ORDERED** that the Clerk of the Court is **DIRECTED** to send to Plaintiff Butler one copy of the Complaint, including any exhibits, along with a copy of this Opinion and Order.

It is further **ORDERED** that Plaintiff Butler is **DIRECTED** to file with the Court one copy of his Complaint, including exhibits for each Defendant (five copies) within **30 days** of the entry of this Opinion and Order.

An appeal from this decision would be frivolous and could not be taken in good faith. 28 U.S.C. § 1915(a)(3); *Coppedge v. United States*, 369 U.S. 438, 445 (1962). For that reason, leave to appeal *in forma pauperis* is **DENIED**.

**All Citations**

Not Reported in Fed. Supp., 2021 WL 3566276

---

**End of Document**  © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:24-cv-00141-PJG    ECF No. 15-1,    PageID.109    Filed 04/15/24    Page 6 of 17

Durden v. Bouchard, Not Reported in Fed. Supp. (2020)
2020 WL 5548377

2020 WL 5548377
Only the Westlaw citation is currently available.
United States District Court, E.D.
Michigan, Southern Division.

Torri Montague DURDEN, Plaintiff,
v.
Michael J. BOUCHARD, et al., Defendants.

Case No. 2:20-cv-12161
|
Signed 09/16/2020

**Attorneys and Law Firms**

Torri Durden, Freeland, MI, pro se.

**OPINION AND ORDER OF PARTIAL DISMISSAL**

SEAN F. COX, UNITED STATES DISTRICT JUDGE

*1 Plaintiff Torri Montague Durden, currently confined at the Saginaw Correctional Facility in Freeland, Michigan, filed this *pro se* civil rights action under 42 U.S.C. § 1983. Plaintiff alleges that two members of a "cell extraction team" at the Oakland County Jail used excessive force against him, causing injury and pain. He also alleges Sheriff Michael Bouchard failed to take action to prevent the physical abuse of inmates. Plaintiff seeks money damages and a declaratory judgment that his Eighth Amendment rights were violated.

For the reasons stated below, the Court will dismiss Defendant Bouchard. The Court concludes that Plaintiff has stated an arguable claim against the remaining two defendants.

**I. Background**

On February 22, 2020, Plaintiff was housed in the Oakland County Jail. Plaintiff informed the jail cell extraction team that he had screws and plates in his left pelvis and ankle. During his extraction from the cell, Plaintiff alleges that the officers targeted those areas, and "intentionally stomped [his] knee and ankle repeatedly." (Compl., ECF No. 1, PageID.5). Plaintiff asserts that he showed no resistance or otherwise gave officers any justification for the use of force during the removal from his cell.

Plaintiff sued all three defendants in their official and individual capacities. Plaintiff's sole allegation against Defendant Bouchard is that he "fail[ed] to take action to curb the physical abuse of prisoners ..." (Compl., ECF No. 1, PageID.8).

Plaintiff's complaint includes a copy of medical records from late February and early March 2020. These records indicate swelling in the knee area, pain during activities such as descending stairs, sharp ankle pain, and a limp. (Compl., ECF No. 1, PageID.17-18).

**II. Legal Standard**

Under the Prison Litigation Reform Act ("PLRA"), the Court is required to dismiss *sua sponte* an *in forma pauperis* complaint before service if it determines that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from defendant immune from such relief. 42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b). The dismissal standard under the PLRA is equivalent to that of Federal Rule of Civil Procedure 12(b)(6), as clarified by *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). When evaluating a complaint under that standard, courts "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations as true, and examine whether the complaint contains 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.' " *Hill v. Snyder*, 878 F.3d 193, 203 (6th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678).

Federal Rule of Civil Procedure 8(a) requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," as well as "a demand for the relief sought." Fed. R. Civ. P. 8(a)(2), (3). "[D]etailed allegations" are not necessary, but under Rule 8(a) the pleading must " 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Courts need not "accept as true a legal conclusion couched as a factual allegation[,]" and any "naked assertion[s]" require "further factual enhancement" to comply with Rule 8(a). *Id.* at 555, 557. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550

Case 1:24-cv-00141-PJG    ECF No. 15-1,    PageID.110    Filed 04/15/24    Page 7 of 17

Durden v. Bouchard, Not Reported in Fed. Supp. (2020)
2020 WL 5548377

U.S. at 556). "The plausibility standard ... asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 570).

**\*2**  A *pro se* civil rights complaint is to be construed liberally. *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). And such a complaint " 'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]' " *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

To state a civil rights claim under 42 U.S.C. § 1983, "a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (citation omitted). A plaintiff must allege "more than just mere negligence." *Fisher v. City of Memphis*, 234 F.3d 312, 317 (6th Cir. 2000) (citing *Collins v. City of Harker Heights*, 503 U.S. 115 (1992)) (other citation omitted). In addition, the plaintiff must allege that "the defendants were personally involved in the alleged deprivation of federal rights." *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (citing *Hall v. United States*, 704 F.2d 246, 251 (6th Cir. 1983)).

### III. Discussion

Plaintiffs' first named defendant is Oakland County Sheriff Michael Bouchard. The sheriff is not a proper defendant, and Plaintiff's allegation against him fails to state a claim upon which relief may be granted.

Section 1983 imposes liability on any "person" who violates an individual's federal constitutional or statutory rights. It is well-settled under Michigan law that county jails and sheriff's departments are not legal entities amenable to suit under 42 U.S.C. § 1983. *Vine v. Cty. of Ingham*, 884 F. Supp. 1153, 1158 (W.D. Mich. 1995) (citations omitted); *see also Petty v. County of Franklin, Ohio, et al.*, 478 F.3d 341, 347 (6th Cir. 2007), *abrogation on other grounds recognized by Bailey v. City of Ann Arbor*, 860 F.3d 382, 389 (6th Cir. 2017) (county sheriff's department is not a "person" subject to liability under § 1983). Instead, a claim against a sheriff in official capacity is a claim against the county. *Miller v. Calhoun Cty.*, 408 F.3d 803, 817 n. 3 (6th Cir. 2005) (citing *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1245 (6th Cir. 1989)).

To establish a claim against a county or other governmental entity, a plaintiff must identify a policy or custom of that entity and show that his or her injury resulted from the execution of that policy. *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). Plaintiff has identified no policy that resulted in his injury, only that Defendant Bouchard failed to prevent abuse of prisoners.

As a result, Plaintiff has failed to state a claim against Bouchard in his official capacity. The same allegation fails to state a claim against the sheriff in his individual capacity, because it does not describe any personal involvement by Bouchard in the alleged deprivation of Plaintiff's civil rights. *See Frazier*, 41 F. App'x at 764. Defendant Bouchard will be dismissed.

Construing the complaint liberally and in a light most favorable to the Plaintiff, as the Court must, the Court concludes that Plaintiff's allegations against the remaining two defendants are sufficient to warrant service of the Complaint.

**\*3**  To establish an excessive force claim, a plaintiff must allege that "defendants acted 'maliciously and sadistically for the very purpose of causing harm,' rather than 'in a good faith effort to maintain or restore discipline.' " *Leonard v. Hoover*, 76 F. App'x 55, 57 (6th Cir. 2003) (citing *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). "[T]he use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." *Wilkins v. Gaddy*, 559 U.S. 34, 34 (2010) (citing *Hudson*, 503 U.S. at 4).

Plaintiff's allegations against Defendants Otto and Jones survive screening. The Court will allow Plaintiff's claims against those defendants to proceed.

### IV. Conclusion

For the reasons stated above, it is **ORDERED** that the Complaint (ECF No. 1) is summarily **DISMISSED** with respect to Defendant Bouchard.

Plaintiff's excessive force claims against Defendants Otto and Jones are not subject to summary dismissal. Accordingly, the Court directs that a copy of the complaint and a copy of

Case 1:24-cv-00141-PJG    ECF No. 15-1,    PageID.111    Filed 04/15/24    Page 8 of 17

**Durden v. Bouchard, Not Reported in Fed. Supp. (2020)**
2020 WL 5548377

this order be served upon them by the United States Marshal without prepayment of costs.

**IT IS SO ORDERED**.

**All Citations**

Not Reported in Fed. Supp., 2020 WL 5548377

---

**End of Document**  © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2002 WL 31160298
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK
COURT RULES BEFORE CITING.

Court of Appeals of Michigan.

Nancy SCOTT, Personal Representative of
the Estate of John Scott, Plaintiff-Appellant,
v.
CHARTER TOWNSHIP OF CLINTON,
Clinton Township Police Department, Officer
Michael Friese, Officer Majur, Officer Burgess,
Officer Sherer, Lieutenant Gerald White and
Sergeant Posavetz, Defendants-Appellees.

No. 233266.
|
Sept. 27, 2002.

Before: METER, P.J., and SAAD and R.B. BURNS,[*] JJ.

[*] Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

[UNPUBLISHED]

PER CURIAM.

**\*1** Plaintiff, personal representative of decedent, John Scott, appeals as of right from the trial court's February 28, 2001 order granting summary disposition to defendants. We affirm in part, reverse in part and remand to the trial court for further proceedings consistent with this opinion.

I. Facts and Procedural History

This case arises out of the suicide of decedent John Scott in the Clinton Charter Township jail during the early morning hours of December 15, 1993. Clinton Township police officers arrested Scott during a domestic dispute and placed him in a jail cell following a videotaped booking procedure. Later that night, Scott committed suicide by hanging himself with the drawstring from his pants, which he tied around a portion of a heating or ventilation grate on the wall of his cell.

Plaintiff filed a complaint against the Township, its police department and individual police officers. Plaintiff alleged, among other claims, that (1) the Township and police department are liable for Scott's death under the public building exception to governmental immunity, (2) the individual police officers were grossly negligent for failing to properly monitor Scott, for failing to remove the drawstring from his sweatpants and for failing to obtain necessary medical help, and (3) the officers were deliberately indifferent to Scott's medical needs under 42 USC § 1983 .[1] The trial court granted summary disposition to defendants on all plaintiff's claims and dismissed this case on February 28, 2001.

[1] Plaintiff also asserted claims for nuisance, vicarious liability and common law assault and battery. However, plaintiff does not raise any claim of error regarding the trial court's dismissal of her nuisance and vicarious liability claims, and we deem those issues abandoned. Plaintiff raises the alleged laceration on Scott's head only in the context of her federal § 1983 claims. Therefore, we decline to address her assault and battery claim as a separate issue.

II. Analysis

A. Public Building Exception

Plaintiff alleges that the trial court erred in granting summary disposition to defendants because the Clinton Township jail cell was dangerous and defective and falls within the statutory public building exception to governmental immunity.[2] Specifically, plaintiff claims that the Township and police department breached their duties to properly design the jail cell to prevent an inmate from committing suicide, to build and maintain a cell without an exposed heating grate which constitutes a defective or dangerous condition, and to build and maintain a cell with an unobstructed view of inmates.

[2] The trial court did not specify on which rule it relied in granting summary disposition on plaintiff's various claims. However, a review of the court's opinion and order indicates that the trial court

relied on MCR 2.116(C)(7) in granting summary disposition on this issue. Our Supreme Court set forth the applicable standard of review for motions brought pursuant to MCR 2.116(C)(7) in *Maiden v. Rozwood,* 461 Mich. 109, 119-120; 597 NW2d 817 (1999):

> This Court reviews the grant or denial of summary disposition de novo to determine if the moving party is entitled to judgment as a matter of law. MCR 2.116(C)(7) permits summary disposition where the claim is barred by immunity.
>
> A party may support a motion under MCR 2.116(C)(7) by affidavits, depositions, admissions, or other documentary evidence. If such material is submitted, it must be considered. Moreover, the substance or content of the supporting proofs must be admissible in evidence. [ ] Unlike a motion under subsection (C)(10), a movant under MCR 2.116(C)(7) is not required to file supportive material, and the opposing party need not reply with supportive material. The contents of the complaint are accepted as true unless contradicted by documentation submitted by the movant.

As our Supreme Court explained in *Brown v. Genesee Cty Bd of Com'rs,* 464 Mich. 430, 433-434; 628 NW2d 471 (2001) (plurality opinion), "[a]bsent a statutory exception, a governmental agency is immune from tort liability when it exercises or discharges a governmental function." See M.C.L. § 691.1407(1). It is well-settled that the operation and maintenance of a jail constitutes a governmental function for which a governmental agency is generally immune from suit. *Id.* "Although very broad, [governmental] immunity is subject to a limited number of narrowly drawn exceptions ... including the public building exception, M.C.L. § 691.1406...." *Hickey v. Zezulka,* 439 Mich. 408, 420-421; 487 NW2d 106, reh den and amended 440 Mich. 1203 (1992) (citation omitted). Under the public building exception, M.C.L. § 691.1406:

> **\*2** Governmental agencies have the obligation to repair and maintain public buildings under their control when open for use by members of the public. Governmental agencies are liable for bodily injury and property damage resulting from a dangerous or defective condition of a public building if the governmental agency had actual or constructive knowledge of the defect and, for a reasonable time after acquiring knowledge, failed to remedy the condition or to take action reasonably necessary to protect the public against the condition.

As the plurality reiterated in *Brown,* the public building exception applies if the plaintiff demonstrates:

> (1) a governmental agency is involved, (2) the public building in question was open for use by members of the public, (3) a dangerous or defective condition of the public building itself exists, (4) the governmental agency had actual or constructive knowledge of the alleged defect, and (5) the governmental agency failed to remedy the alleged defective condition after a reasonable period or failed to take action reasonably necessary to protect the public against the condition after a reasonable period. [*Brown, supra* at 435, quoting *Kerbersky v. Northern Mich. Univ,* 458 Mich. 525, 529; 582 NW2d 828 (1998).]

In *Brown,* the plurality held that, though a jail is generally open to members of the public, to maintain a claim under the public building exception "the plain statutory language ... requires that the party seeking relief be a member of the 'public.' " *Brown, supra* at 435-436. The plurality unequivocally held that, for purposes of the public building exception, "[j]ail inmates are not members of the public...." *Id.* at 439.

While plurality opinions are generally not binding on this Court, *Butterworth Hosp v. Farm Bureau Ins Co,* 225 Mich.App 244, 248-249; 570 NW2d 304 (1997), in his concurrence, Justice Markman agreed with the plurality's conclusion that "a jail inmate is not a member of the public for purposes of the public building exception...." *Brown, supra* at 440-442 (Markman, J., concurring). Thus, a majority of the

justices agreed on this issue and we consider the holding in *Brown* dispositive.

Pursuant to *Brown*, plaintiff's building defect claims fail as a matter of law. Scott, as an inmate at the Clinton Township jail, was not a member of the public for purposes of the public building exception. Accordingly, defendants are immune from suit for torts arising from Scott's suicide based on their alleged negligent design and maintenance of the jail cell. MCL 691.1407(1). The trial court correctly granted summary disposition to defendants under MCR 2.116(C)(7), albeit for a different reason. *Washburn v. Michailoff,* 240 Mich.App 669, 678 n 6; 613 NW2d 405 (2000).

### B. Gross Negligence

Plaintiff asserts that the trial court erred in granting summary disposition to the individual police officers on her gross negligence claims because (1) the trial court improperly relied on *Robinson v. City of Detroit,* 462 Mich. 439; 613 NW2d 307 (2000) in finding that the officers' actions were "the" proximate cause of Scott's injuries; and (2) plaintiff set forth sufficient facts to show that the officers were grossly negligent for refusing to obtain medical treatment for Scott, for disobeying department policies on how to treat suicidal inmates, and for failing to find and remove the drawstring on Scott's pants.

**\*3** Under the employee provision of the governmental immunity act, M.C.L. § 691.1407(2), as quoted in *Robinson, supra* at 458:
Each ... employee of a governmental agency ... shall be immune from tort liability for injuries to persons or damages to property caused by the ... employee ... while in the course of employment ... while acting on behalf of a governmental agency if all of the following are met:

(a) The ... employee ... is acting or reasonably believes he or she is acting within the scope of his or her authority.

(b) The governmental agency is engaged in the exercise or discharge of a governmental function.

(c) The ... employee's ... conduct does not amount to gross negligence that is the proximate cause of the injury or damage. As used in this subdivision, "gross negligence" means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results.

Here, while the trial court ruled that, based on the assertions in plaintiff's complaint and the booking transcript, reasonable minds could differ on whether the officers acted negligently or grossly negligently in failing to handle Scott as a potential suicide risk, the court granted summary disposition to defendants because the officers' actions (or inaction) were not "the" proximate cause of Scott's injuries. Rather, the court ruled that "the" proximate cause was Scott's "own decision to hang himself."

In *Robinson,* our Supreme Court overruled *Dedes v. Asch,* 446 Mich. 99; 521 NW2d 488 (1994), "to the extent that it interpreted the phrase 'the proximate cause' in subdivision (c) to mean 'a proximate cause.' " *Robinson, supra* at 458. The *Robinson* Court reasoned that "[t]he Legislature's use of the definite article 'the' clearly evinces an intent to focus on one cause." *Id.* at 458-459. Therefore, the Court clarified that "[t]he phrase 'the proximate cause' is best understood as meaning the one most immediate, efficient, and direct cause preceding an injury." *Id.* at 459.

The parties do not dispute that Scott committed suicide while he was alone in his cell by tying the drawstring around a heating vent and hanging himself. Therefore, it is undisputed that the "one most immediate, efficient, and direct cause preceding [his] injury" was Scott's act of hanging himself.

It is well-settled that, "[i]f the facts bearing upon proximate cause other than causation in fact are not in dispute and if reasonable minds could not differ about applying the legal concept of proximate cause to those facts, then the issue is one for the court." *Rogalski v. Tavernier,* 208 Mich.App 302, 306; 527 NW2d 73 (1995). The trial court correctly granted summary disposition to the defendant officers because, as a matter of law, plaintiff failed to set forth facts to show that the officers acts were "the" proximate cause of Scott's injuries under *Robinson, supra.* [3] Accordingly, plaintiff's claim is barred by governmental immunity. MCL 691.1407(2); MCR 2.116(C)(7). [4]

[3]  Plaintiff argues that *Robinson* does not apply because it involved a high-speed police chase, not a jail suicide. However, these factual differences do not alter the Supreme Court's plain reading of M.C.L. § 691.1407(2)(c) and plaintiff gives

no persuasive reason why the statute should be interpreted differently under these facts.

4   In their motion, defendants moved to dismiss plaintiff's gross negligence claim under MCR 2.116(C)(10), but argued that plaintiff's claims against the officers are barred by governmental immunity. As discussed below, defendants did not properly support a motion under MCR 2.116(C)(10) because they failed to submit documentary evidence. However, because plaintiff's claim is clearly barred by governmental immunity, summary disposition was properly granted under MCR 2.116(C)(7). "An order granting summary disposition under the wrong court rule may be reviewed under the correct rule." *Shirilla v. City of Detroit,* 208 Mich.App 434, 437; 528 NW2d 763 (1995).

### C. 42 USC § 1983 Claim

**\*4** Plaintiff contends that the trial court erred in granting summary disposition to defendants on her federal claims under 42 USC § 1983 because defendants failed to meet their burden of producing evidence to support their motion under MCR 2.116(C)(10). We agree.

Though the trial court did not state on which rule it relied in granting summary disposition to defendants, it is clear from its opinion and order that it decided this part of the motion under MCR 2.116(C)(10). The trial court considered evidence submitted by plaintiff, including the booking transcript and the police department's policy and procedure manual. The trial court concluded that, while evidence showed that Scott "arguably expressed suicidal ideations," the police officers' "actions did not rise to the level of deliberate indifference to Scott's health of safety."

When judgment is sought under MCR 2.116(C)(10), the moving party must submit "[a]ffidavits, depositions, admissions, or other documentary evidence in support of the grounds asserted in the motion...." MCR 2.116(G)(3)(b); *Meyer v. City of Center Line,* 242 Mich.App 560, 574; 619 NW2d 182 (2000). Moreover, under MCR 2.116(G)(4):

> A motion under subrule (C)(10) must specifically identify the issues as to which the moving party believes there is no genuine issue as to any material fact. When a motion under subrule (C)(10) is made *and supported as provided in this rule,* an adverse party may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, judgment if appropriate, shall be entered against him or her. [Emphasis added.]

In other words, unlike the permissive language regarding the submission of supporting documents under MCR 2.116(C)(7), if the moving party fails to support his motion under (C)(10), judgment is inappropriate and the non-moving party "ha[s] no duty to respond to the motion." *Meyer, supra* at 575. The trial court erred by granting defendants' motion on this issue because defendants failed to submit documentary evidence to support it.

Affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

**All Citations**

Not Reported in N.W.2d, 2002 WL 31160298

---

**End of Document** © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2007 WL 914669
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK
COURT RULES BEFORE CITING.

Court of Appeals of Michigan.

Ariel PEREZ, Sr., Personal Representative
of the Estate of Ariel E. Perez, Jr., Deceased,
Plaintiff-Appellee/Cross-Appellant,
v.
OAKLAND COUNTY, a Michigan
Municipal Corporation, and Roberta Rice,
Defendants-Appellants/Cross-Appellees,
and
Dr. Sarath Hemachandra, Defendant.

Docket No. 271406.
|
March 27, 2007.

Oakland Circuit Court; LC No.2005-065925-NM.

Before: SAWYER, P.J., and FITZGERALD and DONOFRIO, JJ.

**Opinion**

PER CURIAM.

**\*1** Defendants, Oakland County and Roberta Rice,[1] appeal as of right the trial court's order denying their motion for summary disposition pursuant to MCR 2.116(C)(7) and (8) in this wrongful death lawsuit. On cross-appeal, plaintiff challenges the trial court's order disallowing his claim for hedonic damages. Because we conclude that defendants were entitled to summary disposition on the basis of governmental immunity, we reverse the order denying defendants' motion and decline to address plaintiff's cross-appeal because it is moot.

[1] Defendant, Dr. Sarath Hemachandra, a psychiatrist, is no longer participating in this litigation, and is not a party to this appeal.

This action arises from the death of plaintiff's decedent, Ariel E. Perez, Jr., who committed suicide while confined in single cell at the Oakland County jail. At issue on direct appeal is whether defendant county, and defendant Rice, a law enforcement employee involved in Perez's confinement, are entitled to summary disposition on the basis of governmental immunity, MCL 691.1407(1) and (2).

This Court reviews de novo the trial court's decision on a motion for summary disposition based on governmental immunity pursuant to MCR 2.116(C)(7). *Davis v. Detroit,* 269 Mich.App 376, 378; 711 NW2d 462 (2006). To survive a motion raised under MCR 2.116(C)(7), the plaintiff must allege specific facts warranting the application of an exception to governmental immunity. *Renny v. Dep't of Transportation,* 270 Mich.App 318, 322; 716 NW2d 1 (2006). Under MCR 2.116(C)(7), unless the contents of plaintiff's complaint are contradicted by documentary evidence submitted by the moving party, the trial court must accept them as true. *Davis, supra.* The trial court may consider the parties' pleadings, affidavits, depositions, admissions, and other documentary evidence filed to determine whether a plaintiff's suit is barred by governmental immunity. *Renny, supra* at 321.

Governmental immunity is addressed by the government tort liability act (GTLA), which states:

> (1) Except as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function. [MCL 691.1407(1).]

The exceptions provided in the act are the highway exception, MCL 691.1402, the motor vehicle exception, MCL 691.1405, the public building exception, MCL 691.1406, the proprietary function exception, MCL 691.1413, and the governmental hospital exception, MCL 691.1407(4).

The only other tort claims that will survive a grant of immunity are "those that arise from the exercise or discharge of a nongovernmental function." *Tate v. City of Grand Rapids,* 256 Mich.App 656, 659; 671 NW2d 84 (2003). A governmental function is an activity that is "expressly or impliedly mandated or authorized by constitution, statute, or other law." *Ross v. Consumers Power Co. (On Rehearing),* 420 Mich. 567, 620; 363 NW2d 641 (1984); MCL 691.1401(f). MCL 691.1407(2) provides individual immunity

Case 1:24-cv-00141-PJG ECF No. 15-1, PageID.117 Filed 04/15/24 Page 14 of 17
Perez v. Oakland County, Not Reported in N.W.2d (2007)
2007 WL 914669

for governmental employees under certain circumstances. The statute states, in part:

**\*2** Except as otherwise provided in this section, ... each officer and employee of a governmental agency ... is immune from tort liability for an injury to a person ... caused by the officer, employee ... while acting on behalf of a governmental agency if all of the following are met:

(a) The officer, employee ... is acting or reasonably believes he or she is acting within the scope of his or her authority.

(b) The governmental agency is engaged in the exercise or discharge of a governmental function.

(c) The officer's, employee's ... conduct does not amount to gross negligence that is the proximate cause of the injury or damage. [MCL 691.1407(2); *Cooper v. Washtenaw County,* 270 Mich.App 506, 508; 715 NW2d 908 (2006).]

Employees of a governmental agency acting within the scope of their authority and in furtherance of a governmental function are immune from tort liability unless their conduct constitutes gross negligence that is the proximate cause of the injury. MCL 691.1407(2); *Robinson v. Detroit,* 462 Mich. 439, 462; 613 NW2d 307 (2000). Gross negligence is "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(7)(a); *Xu v. Gay,* 257 Mich.App 263, 269; 668 NW2d 166 (2003). The issue of gross negligence may be determined by summary disposition only where reasonable minds could not differ. *Jackson v. Saginaw County,* 458 Mich. 141, 146-147; 580 NW2d 870 (1998). Proximate cause is satisfied where gross negligence is the one most efficient and direct cause preceding the injury. *Rakowski v. Sarb,* 269 Mich.App 619, 636; 713 NW2d 787 (2006).

Plaintiff argues that there is sufficient evidence that defendant Rice's conduct amounts to gross negligence and that there is sufficient evidence that defendant Rice's conduct is "the" proximate cause of plaintiff's decedent's death. Plaintiff specifically asserts that defendant Rice was grossly negligent when she cleared plaintiff's decedent for single cell housing without special watch and without regard for his serious mental illness, past conduct, and jail policy. Plaintiff provides that defendant Rice's "placement of [plaintiff's decedent], a seriously mentally ill inmate who was not receiving treatment, in a single cell without any watch constituted 'the' proximate cause of [plaintiff's decedent's] ultimate death," essentially because the suicide was foreseeable under the circumstances.

The operation and maintenance of a jail constitutes a governmental function for which a governmental agency is generally immune from suit. *Jackson v. County of Saginaw,* 458 Mich. 141, 148; 580 NW2d 870 (1998). Thus, pursuant to MCL 691.1407(2)(c), defendant Rice's conduct must have been "the proximate cause of the injury" in order to proceed on an allegation of gross negligence. "The phrase 'the proximate cause' within subdivision (c) 'is best understood as meaning the one most immediate, efficient, and direct cause preceding an injury.' " *Cooper, supra* at 509, quoting *Robinson v. Detroit,* 462 Mich. 439, 459; 613 NW2d 307 (2000). Our Court recently explicitly discussed the concept of proximate cause in *Cooper, supra,* a case involving inmate suicide. *Cooper, supra* at 508-511. After reviewing applicable case law, the *Cooper* Court observed that:

> **\*3** There is no discussion of intervening causation or foreseeability in these cases and no indication that the cause that is the most immediate, efficient, and direct cause preceding an injury may not be deemed 'the proximate cause' for purposes of MCL 691.1407(2) if it was foreseeable to the governmental actors. [*Id*., at 510.]

The *Cooper* Court ultimately held that the alleged conduct of the governmental actors was not the proximate cause of the inmate's death and held that the defendants were immune from tort liability pursuant to MCL 691.1407(2). *Id.,* at 510-511. Applying *Cooper* to the facts requires the determination that regardless of her behavior, Rice's conduct cannot be deemed "the" proximate cause of plaintiff's decedent's death when, even if foreseeable, it was not the "most immediate, efficient, and direct cause preceding" the injury. *Id.*

Plaintiff has alleged errors on cross-appeal. Because our resolution of the foregoing renders the issues moot, we decline to address the merits of plaintiff's cross-appeal regarding hedonic damages. *Commercial Union Ins. Co. v. Liberty Mut. Ins. Co.,* 426 Mich. 127, 139; 393 NW2d 161 (1986).

Reversed.

FITZGERALD, J. (concurring.).

I concur because I am obligated by *Cooper v. Washtenaw Co.,* 270 Mich.App 506; 715 NW2d 908 (2006) to do so.[1] However, I believe that genuine issues of material exist as to whether defendants' alleged gross negligence was the proximate cause of the suicide of the decedent.

[1] The Supreme Court denied the application for leave to appeal in *Cooper*. However, I continue to believe that *Cooper's* holding that the conduct of a governmental actor cannot be the proximate cause of death of an inmate who commits suicide is erroneous.

Plaintiff's decedent was placed in the Oakland County Jail for a probation violation. He had previously attempted suicide in the jail, made suicidal statements in the jail, and had been on active suicide watch due to his mental illness. Within thirteen hours of his arrival at the jail on October 24, 2002, he attempted suicide by hanging. The decedent was placed on suicide watch until October 28, whereafter he was housed in a multiple person cell. On November 13, 2002, defendant Rice cleared plaintiff's decedent for single-call housing without any special watch. The decedent attempted suicide by hanging on November 22 and died a few days later.

These undisputed facts could lead a reasonable jury to conclude that defendants were grossly negligent. In *Cooper, supra,* a case involving similar facts, Judge Cooper, in her dissenting opinion, opined that "the alleged gross negligence may be the most direct cause of [the] decedent's suicide if his actions were sufficiently foreseeable to fail as superseding causes or, alternatively, if his instability precluded competent volitional action." *Id.* at 513. She noted that:

> The facts of this case clearly suggest decedent's final acts were foreseeable. As such, they are arguably not intervening and superseding causes, and do not relieve defendants of liability for their alleged gross negligence. Critical to the determination of this and like cases by summary disposition, whether an intervening act of negligence is a superseding proximate cause is a question for the jury. [*Id.* at 514.]

**\*4** Judge Cooper concluded in her dissenting opinion in *Cooper* that genuine issues of material fact remained concerning whether the defendants' alleged gross negligence in failing to monitor a prisoner they knew to be suicidal was the proximate cause of the decedent's death and whether the decedent's actions constituted an intervening and superseding cause.

I concur with Judge Cooper's analysis in her dissenting opinion in *Cooper* and would hold that, in light of the evidence that the decedent's suicide was foreseeable, questions of material fact exist for the trier of fact. I would affirm.

**All Citations**

Not Reported in N.W.2d, 2007 WL 914669

---

End of Document  © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2019 WL 4743862
Only the Westlaw citation is currently available.
United States District Court, W.D.
Michigan, Northern Division.

Darren FINDLING as Personal Representative FOR
the ESTATE OF Jeremy Alan GARZA, Plaintiff,
v.
MICHIGAN DEPARTMENT OF
CORRECTIONS, et al., Defendants.

Case No. 2:17-CV-18
|
Signed 09/30/2019

**Attorneys and Law Firms**

Jeremy Tiedt, Michigan Accident & Injury Law, PLC, Joseph Sukup, Johnson Law PLC, Grand Rapids, MI, S. Jay Ahmad, Johnson Law PLC, Detroit, MI, for Plaintiff.

Michael Richard Dean, Michigan Department of Attorney General Civil Litigation, Employment & Elections, Lansing, MI, for Defendants.

## ORDER ADOPTING IN PART AND REJECTING IN PART REPORT AND RECOMMENDATION

GORDON J. QUIST, UNITED STATES DISTRICT JUDGE

**\*1** Plaintiff, Darren Findling, as Personal Representative for the Estate of Jeremy Alan Garza, sued the Michigan Department of Corrections (MDOC) and several MDOC employees, alleging various federal- and state-law claims arising out of Garza's suicide, which occurred while Garza was incarcerated with the MDOC. Defendants filed a motion for summary judgment. (ECF No. 27.) On September 11, 2019, Magistrate Judge Maarten Vermaat issued a Report and Recommendation (R & R) (ECF No. 33), recommending that the Court grant the motion in part and deny it in part as follows: (1) dismiss the MDOC on the basis of Eleventh Amendment immunity; (2) grant summary judgment to Defendants Napel, Alexander, Place, Wagner, Kessler, Whitney, and Bush based on their lack of personal involvement in the incident; and (3) grant summary judgment to Defendant Viitala based on lack of evidence of deliberate indifference; and (4) deny summary judgment to Defendants Kutchie and LaForest, leaving Findling's Eighth Amendment deliberate indifference and state-law gross negligence claims against them as the only remaining claims in the case. (*Id.* at PageID.513, 517.)

Defendants Kutchie and LaForest have filed Objections to the R & R, in which they argue that the magistrate judge erred in recommending that the Court deny the motion on Findling's state-law gross negligence claims against them. Pursuant to 28 U.S.C. § 636(b), upon receiving an objection to a report and recommendation, the district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." After conducting a de novo review of the R & R, Defendants Kutchie's and LaForest's Objections, and the pertinent portions of the record, the Court concludes that the R & R should be adopted except for its recommendation to allow the gross negligence claim to proceed against Defendants Kutchie and LaForest.

Defendants argue that the magistrate judge erred in not granting them summary judgment or governmental immunity [1] on the gross negligence claim because their actions or inactions were not the proximate cause of Garza's death. Citing *Johnson v. Williams*, 2017 WL 4236548, at \*12 (E.D. Mich. Sept. 25, 2017), the magistrate judge said that "[t]he fact that an inmate committed suicide does not mean that no other conduct could be the proximate cause to that inmate's death." (ECF No. 33 at PageID.529.) Defendants argue that the magistrate judge erred in relying on *Johnson* because *Johnson* involved a negligence claim, rather than a gross negligence claim under Michigan's Governmental Tort Liability Act (GTLA), and both of the cases cited in *Johnson*, *Teal v. Prasad*, 283 Mich. App. 384, 772 N.W.2d 57 (2009), and *Estate of Pace v. Hurley Medical Center*, No. 378732 (Mich. Ct. App. Jan. 26, 2017), were medical malpractice cases involving suicides.

[1] Defendants refer to qualified immunity in their Objections, but because the claim is a state-law gross negligence claim, the immunity that would apply is governmental immunity under Michigan's Governmental Tort Liability Act, M.C.L. § 691.1407.

**\*2** As the magistrate judge correctly noted, the Michigan Supreme Court has held that "the proximate cause," as used in M.C.L. § 691.1407(2), "means the one most immediate, efficient, and direct cause preceding an injury, not 'a proximate cause.' " *Robinson v. City of Detroit*, 462 Mich.

439, 445, 613 N.W.2d 307, 311 (2000). In *Robinson*, the plaintiffs were innocent passengers injured in a car driven by an underage driver who was fleeing police officers. Applying the GTLA proximate cause standard, the court held that it was the conduct of the reckless driver, not the conduct of the pursuing police officers, that was the proximate cause of the plaintiffs' injuries. *Id.* at 462, 613 N.W.2d at 319. In *Livermore ex rel. Rohm v. Lubelan*, 476 F.3d 397 (6th Cir. 2007), the decedent, who was avoiding arrest, was shot and killed by a sniper as the decedent pointed his gun toward police officers. The court held that the officer was immune from the plaintiff's gross negligence claim because "the proximate cause of Rohm's death was not Lt. Ellsworth's conduct, but rather Rohm's decision to disregard his promise to surrender unarmed and to set fire to his residence." *Id.* at 409.

The Court's own research reveals that in prisoner-suicide cases, Michigan and federal courts have held that the prisoner's suicide was the proximate cause of the death. For example, in *Soles v. Ingham County*, 316 F. Supp. 2d 536 (W.D. Mich. 2004), a judge in this district wrote:

> [E]ven if Mitchell, Cates or Haven were deemed responsible for some nonfeasance amounting to gross negligence, liability could be imposed only if such nonfeasance was the proximate cause of Aaron's death. Yet, it is undisputed that Aaron committed suicide while he was alone in his cell by hanging himself with a bed sheet. The one most immediate, efficient and direct cause of his death was clearly not any nonfeasance by defendants, but Aaron's own volitional self-destructive act.

*Id.* at 546 (citing *Scott v. Charter Twp. of Clinton*, 2002 WL 31160298 (Mich. Ct. App. Sept. 27, 2002)). Similarly, in *Cooper v. Washtenaw County*, 270 Mich. App. 506, 715 N.W.2d 908 (2006), the Michigan Court of Appeals applied *Robinson*'s proximate cause standard and concluded that the defendants were immune on the plaintiff's gross negligence claim because "the one most immediate, efficient, and direct cause of Morton's death was his own conduct," i.e., his suicide while confined in a holding cell. *Id.* at 508–09, 715 N.W.2d at 909. *See also Bradley v. City of Ferndale*, 148 F. App'x 499, 514 (6th Cir. 2005) (citing *Scott and Soles* and concluding that "it is clear that the one most immediate, efficient and direct cause of Bradley's death was his own act of hanging himself"); *Perez v. Oakland Cty.*, No. 271406, 2007 WL 914669, at *3 (Mich. Ct. App. Mar. 27, 2007) (citing *Cooper* and concluding that the proximate cause of the inmate's death was his own act of suicide).

In light of the foregoing cases, the Court concludes that under the GTLA, Garza's act of hanging himself was the one most immediate, efficient and direct cause of Garza's death. Accordingly, Defendants Kutchie and LaForest are entitled to governmental immunity on the gross negligence claim.

Therefore,

**IT IS HEREBY ORDERED** that the September 11, 2019, Report and Recommendation (ECF No. 33) is **ADOPTED IN PART AND REJECTED IN PART** as the Opinion of this Court. Defendants' Objections (ECF No. 35) are **SUSTAINED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 27) is **GRANTED** with regard to all claims against Defendants MDOC, Napel, Alexander, Place, Wagner, Kessler, Whitney, Bush, and Viitala and the gross negligence claims against Defendants Kutchie and LaForest and **DENIED** with regard to the deliberate indifference claims against Kutchie and LaForest. The case will proceed solely on the deliberate indifference claims against Defendants Kutchie and LaForest.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 4743862